# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Doe 1, John Doe 2, John Doe 3   :
and Jane Doe 1,   :
              Appellants   :
  :
           v.   :   No. 1634 C.D. 2015
  :   Argued: March 7, 2016
Franklin County, Franklin County   :
Sheriff's Office, Franklin County   :
Sheriff Dane Anthony and Employee   :
John/Jane Does   :

BEFORE:      HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY
JUDGE COHN JUBELIRER                  FILED: May 20, 2016

John Doe 1, John Doe 2, John Doe 3, and Jane Doe 1 (together, "Licensees") appeal from an August 13, 2015 Order of the Court of Common Pleas of the 39th Judicial District (Franklin County branch) (common pleas)[1] sustaining the Preliminary Objections (POs) of Franklin County (County), Franklin County Sheriff's Office (Sheriff's Office), and Franklin County Sheriff Dane Anthony (Sheriff Anthony) (together, "Defendants") and dismissing their Complaint.[2] At

---

[1] All members of the Court of Common Pleas of Franklin County were recused from this matter. The matter was assigned to Senior Judge Stewart L. Kurtz of the Court of Common Pleas of Huntingdon County.

[2] Licensees also asserted claims against two unnamed employees of Defendants (Employee Does). Employee Does were not served and did not enter their appearance in this matter. Common pleas construed Defendants' POs to be on behalf of all parties, including the Employee Does.

issue in this appeal are allegations concerning the procedures by which Defendants manage issuing, renewing, revoking, and denying Licenses to Carry Firearms (License). Licensees allege that Defendants' procedures violate various provisions of the Pennsylvania Uniform Firearms Act of 1995 (UFA),[3] and that Defendants have infringed upon Licensees' privacy, breached their fiduciary duties to Licensees, and committed civil conversion. Upon review, we reverse in part, affirm in part, and remand for further proceedings.

## I.    BACKGROUND

Licensees are four adult residents of the County that have received a License from the Sheriff's Office. Licensees filed an eight-count Class Action Complaint (Complaint) against Defendants on December 19, 2014. Therein, Licensees allege that since prior to January 1, 2009, Defendants have notified individual License applicants that their applications have been approved, denied, or that their Licenses were revoked utilizing un-enveloped postcards through the United States Postal Service (USPS). (Compl. ¶¶ 18-19, 21.) The writing exposed on the postcards allegedly includes the applicant's name, address, and a statement that the application has been approved, denied, or License revoked. (Compl. ¶¶ 18-19.) Licensees further allege that since before January 1, 2009, Defendants have issued renewal notices to *some* License holders using postcards through the USPS stating: "Pistol Permit – Our Records indicate that your Permit to Carry a Firearm will soon expire. . . ." (Compl. ¶ 21.) Licensees allege that because the information was sent on a postcard, the approval, denial, revocation, and renewal notices were "visible by all individuals processing, mailing[,] and serving the mail, as well as,

---

[3] 18 Pa. C.S. § 6101-6127.

2

by any individual receiving the postcard at the address, who may or may not be the applicant or license holder." (Compl. ¶ 22.) Licensees also allege that Licensees paid a fee to the County when they received their prior License that includes a $1.50 renewal notice processing fee and that Defendants did not send the required renewal notices or refund the $1.50 to two of the Licensees – John Doe 1 and Jane Doe 1 – and other similarly situated License holders. (Compl. ¶¶ 20, 36, 52.)

Counts I-IV of the Complaint allege that, by sending renewal, approval, denial, revocation, and renewal notices via a postcard instead of enclosing the information within an envelope, the County (Count I), the Sheriff's Office (Count II), Sheriff Anthony (Count III), and Employee Does (Count IV) disclosed confidential information in violation of Section 6111(i) of the UFA, 18 Pa. C.S. § 6111(i).[4] (Compl. ¶¶ 69-84.)

Count V alleges that Defendants and Employee Does violated Licensees' "right to privacy and invaded their seclusion, solitude, and private affairs, by, but not limited to, publicly disclosing confidential information. . . ." (Compl. ¶ 86.) Licensees allege that in addition to their statutory right of privacy under Section 6111(i) of the UFA, they have a right to privacy that is incident to the Right to Keep and Bear Arms, and that "[t]he disclosure of confidential information is highly offensive to a reasonable person and is not of legitimate concern to the public." (Compl. ¶¶ 87-88.)

Count VI of the Complaint alleges that pursuant to Section 6109(h) of the UFA, 18 Pa. C.S. § 6109(h), Defendants County, Sheriff's Office, and Sheriff Anthony are required, and owed Licensees a fiduciary duty, to "either utilize the $1.50 [paid to the County by Licensees] in the issuance of renewal notices or to

---

[4] Added by Section 1 of the Act of April 22, 1997, P.L. 73.

3

refund the money to [Licensees]." (Compl. ¶ 94.) Relatedly, Count VII alleges that these Defendants are liable for conversion for failing to either use the funds for renewal notices or refund $1.50 to Licensees. (Compl. ¶¶ 96-98.)

The final count of the Complaint, Count VIII,[5] alleges that Defendants have violated the law and Licensees will be irreparably harmed if the practices complained of above are allowed to continue. (Compl. ¶ 100.) Licensees seek various forms of injunctive and declaratory relief, including: (1) an injunction prohibiting Defendants from disclosing confidential information to those not authorized under the UFA; (2) an injunction requiring Defendants to train its employees on confidentiality; (3) an injunction requiring Defendants to use $1.50 of the License application fee for issuing renewal notices; (4) declaratory relief declaring that Defendants' policy of requiring License applicants to provide references on License applications violates Section 6111(i) of the UFA; and (5) an injunction barring Defendants from requiring License applicants to provide references on License applications. (Compl. ¶¶ 102-04.) In addition to the equitable relief sought in Count VIII, Licensees seek damages of $1000 "per Defendant, per disclosure [of confidential information], per Class Member," $1.50 per licensee for each five-year period where renewal notices were not issued, and an award of attorney fees, expenses, costs, and interest. (Compl. Prayer for Relief ¶¶ 8-11.)

Defendants filed POs on February 2, 2015, demurring to the allegations in the Complaint and alleging that the averments lacked specificity. Defendants' POs

---

[5] The final count of the Complaint is listed as Count VII. Because the Complaint alleges two separate counts as Count VII, common pleas construed the final count as Count VIII. We will do the same herein.

4

allege as follows:[6] (1) some or all claims are barred by the applicable statute of limitations, (POs ¶¶ 23-28); (2) Defendants did not violate Section 6111(i) of the UFA because confidential information was not disclosed to the public, (POs ¶¶ 20-22); (3) Sheriff Anthony is immune from suit under the doctrine of high public official immunity, (POs ¶¶ 11-15); (4) the Sheriff's Office is not a proper defendant because it is not a legal entity separate from the County itself, (POs ¶¶ 16-17); (5) Licensees have no available civil cause of action to recover damages for, or a refund of, the $1.50 notice processing fee, (POs ¶¶ 53-61); (6) the County itself, including the Sheriff's Office, is immune from suit under the act popularly known as the Political Subdivision Tort Claims Act (Tort Claims Act),[7] (POs ¶¶ 29-35); (7) Licensees have not stated a claim for invasion of privacy because they have not pleaded facts showing that all the elements of the claim have been met, (POs ¶¶ 36-52); (8) Licensees' request for injunctive relief must fail because Licensees have no clear right to relief, (POs ¶¶ 62-65); (9) the policy of requesting references is lawfully performed pursuant to a duty imposed upon Sheriff Anthony by the UFA, (POs ¶¶ 66-70); and (10) the Complaint lacks the specificity required to inform Defendants of the factual grounds upon which their claims are based, (POs ¶¶ 71-86).

Defendants filed a Motion to Supplement Preliminary Objections (Motion to Supplement) on March 25, 2015, seeking to add an objection alleging that Act 5 of 1997, which amended the UFA and included the provisions at issue in Licensees' Complaint, is unconstitutional under both the single-subject rule of Article III, Section 3 of the Pennsylvania Constitution and the original purpose rule of Article

---

[6] The POs have been reordered for purposes of this opinion.

[7] 42 Pa. C.S. §§ 8541-8564.

III, Section 1 of the same. Pa. Const. art. III, §§ 1, 3; (R.R. at 149a-51a). Licensees filed an Answer to Defendants' Motion to Supplement and included New Matter alleging that: (1) Franklin County Local Rules and the Rules of Civil Procedure prohibited supplementing POs; (2) Defendants are estopped from raising the issue because they failed to take timely action after they became aware of the objection; (3) Defendants' constitutional argument is foreclosed by the doctrine of laches; and (4) Defendants failed to join two indispensable parties – the Pennsylvania State Police (State Police) and, possibly, the General Assembly. (R.R. at 270a-73a.) The Motion to Supplement was granted by common pleas over Licensees' objection on May 8, 2015. (C.R. at Item 12.)

Common pleas issued an Order and Memorandum Opinion on August 13, 2015, sustaining many of Defendants' POs and dismissing the Complaint. First, common pleas held that Sheriff Anthony was immune to all claims seeking damages under the doctrine of high public official immunity. (Op. at 6-8.) Second, common pleas held that the Sheriff's Office was not an independent legal entity that could be subject to liability. (Op. at 8-9.) Third, common pleas sustained Defendants' POs to Licensees' invasion of privacy and conversion claims on the basis that Defendants are immune from such claims under the Tort Claims Act; however, common pleas overruled the POs alleging Defendants' immunity to Counts I-IV of the Complaint pursuant to the Tort Claims Act. (Op. at 9-10.) Fourth, common pleas sustained Defendants' demurrer to Count VI of the Complaint on the grounds that Section 6109 of the UFA does not create a private right of action for the recovery of $1.50 of the License application fee. (Op. at 10.) Fifth, common pleas analyzed Section 6111(i) of the UFA and concluded that Licensees did not state a claim for relief under Section 6111(i) of

6

the UFA because Licensees did not plead facts indicating that Defendants publicly disclosed confidential information.  (Op. at 11-13.)  Finally, common pleas held that Licensees did not sufficiently establish a clear right to injunctive and declaratory relief and sustained the demurrer to Count VIII of Licensees' Complaint.  (Op. at 13-14.)  Having sustained POs addressing every claim asserted by Licensees, common pleas dismissed the action without addressing Defendants' POs alleging insufficient specificity, that the actions are time-barred by the applicable statute of limitations, or Defendants' supplemental PO alleging that Act 5 of 1997 was enacted in a constitutionally infirm process.  This appeal followed.

## II.     DISCUSSION

When reviewing a court of common pleas' decision to sustain preliminary objections in the nature of a demurrer, "our standard of review is *de novo* and our scope of review is plenary."  Owens v. Lehigh Valley Hospital, 103 A.3d 859, 862 n.4 (Pa. Cmwlth. 2014).

> We may affirm a grant of preliminary objections only when it is clear and free from doubt that, based on the facts pled, the plaintiff will be unable to prove facts legally sufficient to establish a right to relief.  In evaluating the legal sufficiency of the challenged pleading, we accept as true all well-pled, material, and relevant facts alleged and every inference that is fairly deducible therefrom.

Id. (internal citations omitted).

Defendants demur to the allegations in the Complaint by asserting both that Licensees fail to state viable statutory and common law claims and, in the

7

alternative, that all Defendants are immune from liability to some degree.[8] We shall first address the substance of Licensees' statutory claims and the associated defenses, and then proceed to address Licensees' common law claims.[9]

### A. Claims Against Employee Does

Employees John and Jane Does were never served with the Complaint, never entered their appearance in this matter, and never filed preliminary objections. To the extent common pleas dismissed claims against these Employees on the basis of POs, common pleas erred. Therefore, we reverse common pleas' dismissal of Licensees' claims against Employee Does in Counts IV, V, and VIII and will not address such claims any further.

### B. Claims Under the UFA

#### 1. Confidentiality Under Section 6111(i) of the UFA

Counts I-III of Licensees' Complaint allege that Defendants violated Section 6111(i) of the UFA by sending information pertaining to their License applications via postcards instead of enclosing the information within envelopes. Section 6111(i) of the UFA provides:

> (i) Confidentiality.--**All information** provided by the potential purchaser, transferee or applicant, including, but not limited to, the potential purchaser, transferee or **applicant's name or identity**,

---

[8] Defendants do not argue on appeal that common pleas erred in holding that the County was not immune to the statutory claims under the Tort Claims Act. Accordingly, we will not address this issue herein.

[9] We need not address Defendants' POs alleging that Licensees' claims are barred by the applicable statute of limitations or that the Complaint lacks specificity because these issues were not addressed by common pleas and Defendants have not raised argument on these issues on appeal.

furnished by a potential purchaser or transferee under this section or any applicant for a license to carry a firearm as provided by section 6109 **shall be confidential and not subject to public disclosure**. In addition to any other sanction or penalty imposed by this chapter, **any person**, licensed dealer, **State or local governmental agency or department that violates this subsection shall be liable** in civil damages in the amount of $1,000 per occurrence or three times the actual damages incurred as a result of the violation, whichever is greater, as well as reasonable attorney fees.

18 Pa. C.S. § 6111(i) (emphasis added).

The key phrase in the statute for purposes of the instant matter is: "[a]ll information provided by [the License applicant] . . . **shall be confidential and not subject to public disclosure**." Id. (emphasis added). Defendants understand the above provision as establishing two conditions precedent for a violation to occur: that the information provided by the License applicant is (1) treated non-confidentially; and (2) disclosed to a **substantial number** of people. Common pleas, agreeing with Defendants' construction, reasoned:

> There are only two (2) sentences in the subsection. In the first, in pertinent part, the legislature ordained that "All information provided . . . shall be confidential <u>and</u> not subject to public disclosure." (Emphasis added.) The use of the conjunction "and" is critical and signifies an intent by the legislature that the words and phrases used are connected and must be read together. In this regard, the legislature has provided that "[W]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage; . . .". 1 Pa. C.S.[ §] 1903. In the second sentence, the cause of action for violating this subsection is created. In the context of this case therefore, in our view, Plaintiffs in order to state a claim for relief under Section 6111(i) were obligated to plead facts indicating that a defendant publicly disclosed confidential information provided by a Plaintiff in the course of obtaining a . . . [L]icense or a renewal thereof.
>
> The statute does not define the concept of "public disclosure" but the Superior Court of Pennsylvania has given definition to the comparable

9

concept of "publicity". In <u>Harris v. Easton Pub[lishing] Co[mpany]</u>, . . . 48[3] A.2d 1377 (Pa. Super. 1994), the Court said "publicity" requires the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.

(Op. at 12-13 (emphasis in original).)

"The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." Section 1921(a) of the Statutory Construction Act of 1972 (Statutory Construction Act), 1 Pa. C.S. § 1921(a). We must construe every statute, "if possible, to give effect to all its provisions." <u>Id.</u> In ascertaining the intent of the General Assembly, we presume "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable" and intends "the entire statute to be effective and certain." Section 1922(1), (2) of the Statutory Construction Act, 1 Pa. C.S. § 1922(1), (2).

The purpose of the UFA "is to regulate the possession and distribution of firearms, which are highly dangerous and are frequently used in the commission of crimes." <u>Commonwealth v. Corradino</u>, 588 A.2d 936, 940 (Pa. Super. 1991). To effectuate the statute's purpose, Section 6109(a) of the UFA requires individuals seeking to carry "a firearm concealed on or about one's person or in a vehicle throughout this Commonwealth" to obtain a License. 18 Pa. C.S. § 6109(a). Applicants must apply to the sheriff of the county in which the applicant resides, or in the case of a city of the first class, to the chief of police of that city. 18 Pa. C.S. § 6109(b).[10] In order to obtain a License, an applicant must supply the sheriff with

---

[10] The term "sheriff" is defined by the UFA as "the sheriff of the county" or, "[i]n a city of the first class, the chief or head of the police department." Section 6102 of the UFA, 18 Pa.

*(Continued…)*

10

the reasons for obtaining the License and authorize the sheriff to inspect relevant records. 18 Pa. C.S. § 6109(c). "The decision to issue a [License] is solely for the sheriff, subject to certain absolute statutory prohibitions." Pennsylvania State Police v. McPherson, 831 A.2d 800, 803 (Pa. Cmwlth. 2003).

The General Assembly, evincing concern for the safety of both the information provided to sheriffs and the mere fact that a license is being sought or held, enacted a series of provisions within the UFA aimed at safeguarding information provided by License applicants and holders. First, Section 6109(e)(5) of the UFA addresses the safeguarding of information once an applicant is granted a License by the sheriff. 18 Pa. C.S. § 6109(e)(5). Pursuant to Section 6109(e)(5), the licensee is given an original License from the sheriff and a copy of the License is forwarded to the State Police. Id. A second copy is retained by the sheriff for seven years. Id. At the end of the seven-year period, and unless the License is renewed, the copies of the License held by the sheriff and State Police and the application for a License "shall . . . be destroyed." Id.

The General Assembly's concern for the confidentiality of a licensee's information is further supported by the General Assembly's enactment of Section 6109(l) of the UFA, 18 Pa. C.S. § 6109(l), and its subparts. Section 6109(l) addresses the Firearms License Validation System administered by the State Police, which enables the State Police to respond to inquiries from law enforcement regarding the validity of a License 24 hours a day, seven days a week. 18 Pa. C.S. § 6109(l)(1). Understanding that License information given to sheriffs and, in turn, to the State Police, is confidential and would, absent this provision,

C.S. § 6102. The use of the term "sheriff" in this opinion is to be understood in accordance with the UFA unless noted otherwise by the use of the term "county sheriff" instead of "sheriff".

11

not be subject to disclosure to local police forces, the General Assembly enacted Section 6109(l)(2), which provides: "**Notwithstanding any other law regarding the confidentiality of information**, inquiries to the Firearms License Validation System regarding the validity of any Pennsylvania license to carry a firearm may **only** be made by law enforcement personnel acting within the scope of their official duties." 18 Pa. C.S. § 6109(l)(2) (emphasis added). The General Assembly, evincing additional concern for the confidentiality of the License-related information provided by citizens of the Commonwealth, further limited the information subject to disclosure to out-of-state law enforcement personnel to only "the name of the licensee, the validity of the license and [criminal history information]." 18 Pa. C.S. § 6109(l)(4). If the General Assembly intended to allow disclosure of License information so long as the information is not disclosed to the public at large, Sections 6109(l)(2) and 6109(l)(4) would be superfluous because these permitted disclosures to law enforcement personnel are not to the public at large. In addition, the General Assembly would not have gone to such great lengths to detail the maintenance and destruction of License-related information in Section 6109(e)(5).

It may appear that the General Assembly's use of both "confidential" and "not subject to public disclosure" is duplicative. "Confidential" is defined as "meant to be kept secret," Black's Law Dictionary 294 (7th ed. 1999), and a "disclosure" is defined as "a revelation of facts." Id. at 477. Thus, information that is revealed to the public is not kept secret, and information that is kept secret cannot be revealed to the public. Yet, we must, if possible, give effect to every word of the statute. 1 Pa. C.S. § 1921(a). To do so in this instance, we must

presume that the General Assembly intended some nonpublic disclosure of information; otherwise, the word *public* before *disclosure* would be unnecessary.

Nonetheless, given the extent to which the General Assembly built confidentiality into the UFA, we cannot agree with common pleas' construction of the term "public disclosure" in Section 6111(i) as incorporating the requirement of "publicity" necessary to prove the common law tort of invasion of privacy. A cause of action for common law invasion of privacy through giving publicity to matters concerning the private life of another is established only if private facts are "made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge," and the disclosure is "highly offensive to a reasonable person." Harris, 483 A.2d at 1384. We will not graft the common law elements of this tort onto Section 6111(i) of the UFA without clear indications that the General Assembly intended such elements to apply.

Instead, in light of the purpose and structure of the statute, we conclude that the General Assembly included both the term "confidential" and the phrase "not subject to public disclosure" in Section 6111(i) so that issuing sheriffs may disclose the information to those necessary for law enforcement or criminal justice purposes. While the sheriff is given the sole discretionary authority under the UFA statutory scheme to grant a License, the UFA provides roles for other entities in the process of determining whether a License should be granted or revoked. Because License applicants apply directly to the sheriff and the decision to issue Licenses belongs to the sheriff alone, absent the phrase "not subject to public disclosure," issuing sheriffs could be required to keep the information secret from everyone,

including those entities given a role in the licensing process by statute,[11] criminal justice agencies, or those involved in the administration of the sheriff's office. We therefore interpret Section 6111(i) of the UFA to mean that "any person, licensed dealer, State or local governmental agency or department" violates Section 6111(i) of the UFA by revealing an "applicant's name or identity" to a person not (1) authorized to receive such information by statute; (2) involved in the operation or management of the sheriff's office; (3) representing a law enforcement or criminal justice agency; or (4) otherwise authorized by an applicant. Disclosure to any other person constitutes "public disclosure" for purposes of this section. Any other interpretation of Section 6111(i) of the UFA where a License applicant's

---

[11] The investigation into whether a License is to be issued involves not only the sheriff, but also the State Police. In <u>McPherson</u>, 831 A.2d at 803, this Court explained:

> The decision to issue a license is solely for the sheriff, subject to certain absolute statutory prohibitions. However, while the sheriff has sole discretionary authority, under the statutory scheme established with the 1995 amendments to the UFA, which added the provision for [State Police] reports of criminal history, the [State Police] has a mandatory role in the investigation which the sheriff must undertake. This scheme of investigation and reporting on the part of the [State Police] establishes a more rigorous process as a prerequisite to obtaining a gun license and deprives the sheriff of some of the exclusive investigatory power and discretion he had prior to 1995.

<u>Id.</u> (citations omitted); <u>see</u> Section 6111.1 of the UFA, 18 Pa. C.S. § 6111.1 (detailing the duties of the State Police in the investigative process). Under certain circumstances, other entities may be involved in the licensing process as well. Pursuant to Section 6109(i.1)(1) of the UFA, if a person is convicted of certain crimes, "[n]otwithstanding any statute to the contrary[,]" the court "shall determine if the defendant has a [L]icense . . . issued pursuant to this section" and notify the applicable sheriff of that conviction. 18 Pa. C.S. § 6109(i.1)(1). Further, Section 6109(i.1)(2) of the UFA also provides a role for "court[s] of common pleas, mental health review officer[s] or county mental health and mental retardation administrator[s]" in situations where a person is adjudicated incompetent or committed to a mental institution. 18 Pa. C.S. § 6109(i.1)(2).

14

confidentiality is not safeguarded would be inconsistent with the UFA's purpose and structure.

This interpretation aligns with the State Police's regulations implementing the UFA which also contains the terms "confidential and not subject to public disclosure." Section 33.103 of the State Police's regulations provides:

> (a) Information furnished under this chapter by an applicant, purchaser, transferee or licensee, or collected by the designated issuing authority under this chapter, **is confidential and not subject to public disclosure.**
> (b) Information collected or maintained under this chapter by the State Police is **confidential and not subject to public disclosure**.
> (c) **Nonpublic disclosure** by the State Police of information collected, furnished or maintained under this chapter **is restricted to**:
>> (1) Disclosure upon request of the applicant, licensee, purchaser or transferee, as described in sections 6109 and 6111 of the act (relating to licenses; and sale or transfer of firearms), upon documentary certification that the requestor is in fact the applicant, licensee, purchaser or transferee.
>> (2) Disclosure upon request of a county sheriff or a criminal justice agency, defined as any court, including the minor judiciary, with criminal jurisdiction or any other governmental agency, or subunit thereof, created by statute or by the State or Federal constitutions, specifically authorized to perform as its principal function the administration of criminal justice, and which allocates a substantial portion of its annual budget to this function. Criminal justice agencies include: organized State and municipal police departments, local detention facilities, county, regional and State correctional facilities, probation agencies, district or prosecuting attorneys, parole boards, pardon boards and agencies or subunits thereof, as are declared by the Attorney General to be criminal justice agencies as determined by a review of applicable statutes and the State and Federal Constitutions, or both.

37 Pa. Code § 33.103(a)-(c) (emphasis added). Pursuant to these regulations, information provided by a License applicant can only be disclosed upon request of

15

applicants themselves, to criminal justice agencies, or to a court. 37 Pa. Code § 33.103(c). We "defer to an administrative agency's interpretation of its own regulations unless that interpretation is unreasonable." Department of Environmental Protection v. North American Refractories Company, 791 A.2d 461, 464 (Pa. Cmwlth. 2002).

With the foregoing in mind, we turn to the postcard at issue. The postcard received by Licensees provides, as follows.

☑ **PISTOL PERMIT**

☑ Your PERMIT has been approved and may be picked up Monday thru Friday between the Hours of 8:30 AM and 4:00 PM. It is not necessary to respond within 5 days.

☐ Our Records indicate that your Permit to Carry a Firearm will soon expire. You may pick up an application for renewal at our Office - Please allow 30 days for online processing. Application is available online at www.co.franklin.pa.us. If already renewed, please disregard.

☐ **PROCESS**

We currently have a "Process" naming you as a defendant. This document was issued because of outstanding costs owed to a Franklin County Agency or Office. If unpaid you could be picked up and possibly incarcerated. Please call to make arrangements to resolve this issue.

☐ **WARRANT**

Our Office has a Warrant for your arrest. Please call as soon as possible for more information.

☐ **LEGAL DOCUMENT**

Our Office has a Document that lists you as a Defendant or as a Party Of Interest in a Civil matter. It is essential that this paper be served to you. Please call to make arrangements.

**Franklin County Sheriff's Office**
157 Lincoln Way East
Chambersburg, PA 17201-2233
Telephone# (717) 261-3877

Office Hours: 8:30 to 4:30 Mon. to Fri., closed Sat. & Sun.

16

The above postcard, which shows on its face that the intended recipient either has a License or intends to receive one, is sent by Defendants without the use of an envelope. Given our interpretation of the statutory provision, it is not clear at this stage of the proceedings that sending the postcard does not breach the confidentiality the General Assembly deliberately and extensively crafted into the UFA. Furthermore, at this stage in the proceedings, we must accept as true Licensees' allegation that a similar postcard was sent when a permit had been denied.[12] Owens, 103 A.3d at 862 n.4. Accordingly, we hold that common pleas erred by sustaining Defendants' POs to Counts I, II, and III of the Complaint on this basis.

## 2.    The Renewal Notice Processing Fee

Licensees next allege, in Count VI, that Defendants violated Section 6109(h) of the UFA, 18 Pa. C.S. § 6109(h), and breached their fiduciary duty by failing to either send Licensees' renewal notices or refund the portion of the prior License application fee associated with processing renewal notices for Licensees. (Compl. ¶¶ 92-94.) The Complaint alleges that Licensees John Doe 1 and Jane Doe 1 did

---

[12] Defendants attached an exhibit to the POs that purported to show that denial notices are sent in a sealed envelope bearing only the return address of the Sheriff's Office. (POs ¶ 6, Exhibit A.) We will not consider this exhibit. When considering a demurrer, "a court cannot consider matters collateral to the complaint but must limit itself to such matters as appear therein." Stilp v. Commonwealth, 910 A.2d 775, 791 (Pa. Cmwlth. 2006). While an objecting party may supply documents that form "the foundation of the suit even where a plaintiff does not attach such documents to its complaint," Feldman v. Hoffman, 107 A.3d 821, 836 (Pa. Cmwlth. 2014), this rule applies to foundational and undisputed documents either discussed in, or essential to, a complaint, and not, as here, a disputed document intended to disprove a material allegation of the Complaint.

17

not receive renewal notices, but paid a prior License application fee that included a renewal notice processing fee of $1.50. (Compl. ¶¶ 36, 52.) Licensees seek a refund of $1.50 per Licensee that did not receive renewal notices for each five-year period that renewal notices were not issued. (Compl. Prayer for Relief ¶ 9.) Licensees also allege that the renewal notices received by those licensees that received such notice stated: "Pistol Permit – Our Records indicate that your Permit to Carry a Firearm will soon expire. You may pick up an application for renewal at our Office. . . . Application is available online at www.co.franklin.pa.us." (Compl. ¶ 21.) Defendants demur to these claims by alleging that the UFA does not require Defendants to refund any portion of the License application fee and does not provide a cause of action relating to its breach. (POs ¶¶ 55-58.)

> Section 6109(h) provides, in relevant part:
>
> (1) In addition to fees described in paragraphs (2)(ii) and (3), the fee for a license to carry a firearm is $19. This includes all of the following:
> > (i) A renewal notice processing fee of $1.50.
> > (ii) An administrative fee of $5 under section 14(2) of the act of July 6, 1984 (P.L. 614, No. 127), known as the Sheriff Fee Act.
> . . . .
> (5) The fee is payable to the sheriff to whom the application is submitted and is payable at the time of application for the license.
> (6) Except for the administrative fee of $5 under section 14(2) of the Sheriff Fee Act, **all other fees** shall be refunded if the application is denied but **shall not be refunded if a license is issued** and subsequently revoked.
> (7) A person who sells or attempts to sell a license to carry a firearm for a fee in excess of the amounts fixed under this subsection commits a summary offense.

18 Pa. C.S. § 6109(h) (emphasis added). In enacting Section 6109(h)(1), the General Assembly indicated its intent that the $19 License fee include a renewal

notice processing fee and an administrative fee, and that, except for the administrative fee, the other fees be refunded if the application is denied but not if the license is issued.

In this case, Licensees all applied for a License which was issued. Therefore, under the plain terms of Section 6109(h)(6) of the UFA, there is no provision for refund of any of the application fee. Licensees argue that in enacting Section 6109(h)(1) of the UFA, the General Assembly *required* sheriffs to use $1.50 of the $19 Licensee fee to process renewal notices. Licensees read Section 6109(h) of the UFA in conjunction with Section 6109(f)(2) of the UFA that provides: "At least 60 days prior to the expiration of each license, the issuing sheriff shall send to the licensee an application for renewal of license. Failure to receive a renewal application shall not relieve a licensee from the responsibility to renew the license." 18 Pa. C.S. § 6109(f)(2). Notably, Section 6109(h) of the UFA refers to "renewal **notice** processing," and Section 6109(f)(2) of the UFA refers to "an **application** for renewal of license." Licensees do not comment on the different terms used in the two provisions, but assume that the application for renewal of license described in Section 6109(f)(2) is the renewal notice for which the $1.50 for processing is included in the application fee.

However, even construing these provisions together would not entitle Licensees to a refund of the $1.50. In Section 6109(f)(2), the General Assembly addressed the consequence of a renewal application not being received. The only consequence is that the failure does not relieve the licensee of the burden of renewing the License. Had the General Assembly intended to permit a refund of the $1.50, it could have done so, as it provided for a refund in Section 6109(h)(6); however, it did not do so.

19

Licensees argue that Section 6109(f)(2) requires the Sheriff to send an application for renewal to Licensees and that this statutory "mandate" creates a private right of action for them. However, even if Licensees are correct that there is a statutory "mandate," there is no private remedy.

When a statute provides a mandate upon a government actor without a specific remedy, "we are required to consider whether the statute implicitly creates a private remedy." Estate of Witthoeft v. Kiskaddon, 733 A.2d 623, 626 (Pa. 1999). The Pennsylvania Supreme Court has adopted a modified version of the test first established by the United States Supreme Court in Cort v. Ash, 422 U.S. 66, 78 (1975) for determining whether a statute implicitly creates a private right of action. Estate of Witthoeft, 733 A.2d at 626.[13] According to the test, a court must investigate the following questions:

> [F]irst, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,'- that is, does the statute create a . . . right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

---

[13] The United States Supreme Court in Cort adopted a four-prong test to determine whether an implicit cause of action is created in the statute. Our Supreme Court held in Estate of Witthoeft that because the fourth question addresses whether "the cause of action [is] one traditionally relegated to state law . . . so that it would be inappropriate to infer a cause of action based solely on federal law . . . [it] is inapplicable to a state statute." Estate of Witthoeft, 733 A.2d at 626 n.3 (quoting Cort, 422 U.S. at 78). The federal courts have moved away from the Cort test in favor of an exclusive focus on legislative intent, see Wisniewski v. Rodale, Inc., 510 F.3d 294, 299 (3d Cir. 2007) (stating that "[a]lthough Cort has never been formally overruled, subsequent decisions have altered it virtually beyond recognition"), yet Pennsylvania courts continue to employ the Cort analysis. See Schappell v. Motorists Mutual Insurance Company, 934 A.2d 1184, 1189 (Pa. 2007) (applying the Cort test and stating that the test "reflects the extraneous considerations set forth by [Section 1921 of] the Statutory Construction Act for ascertaining legislative intent" (citing 1 Pa. C.S. § 1921(c)(1), (3), (4))).

20

Id. (quoting Cort, 422 U.S. at 78 (emphasis in original) (citations omitted)).

Even if Licensees are "of the class for whose *especial* benefit the statute was enacted," id., there is no indication of legislative intent to create a private remedy. Licensees posit that, just as the General Assembly imposed a criminal remedy on firearms dealers for violations of the Act, "[i]t would seem, given the construct of [the applicable subsections of the UFA], that had the General Assembly anticipated a sheriff not performing his/her obligation under Section 6109(f), the [General Assembly] would have certainly provided an explicit provision for a refund." (Licensees' Br. at 39.) Licensees thus admit that the General Assembly did not intend to create a remedy because it did not anticipate that sheriffs would not perform their obligations. We agree that there is no indication in the text of the statute that the General Assembly intended to create a private right of action for return of the $1.50 renewal notice processing fee in Section 6109(h)(1) of the UFA.[14] It is not our role to create a cause of action when the General Assembly did not anticipate the need for one. Accordingly, common pleas did not err in sustaining Defendants' PO to Licensees' statutory claim in Count VI.

### 3. Article III Challenges

Defendants argue in their supplemental PO that Licensees' claims under Sections 6111(i) and 6109(h) of the UFA should be dismissed because the act in which the provisions were initially enacted, Act 5 of 1997, was enacted in violation of the original purpose and single-subject rules of Article III, Section 1 and Article

---

[14] Because we conclude that the General Assembly did not intend to create a private remedy, we need not discuss whether a private remedy "'is [] consistent with the underlying purposes of the legislative scheme.'" Estate of Witthoeft, 733 A.2d at 626 (quoting Cort, 422 U.S. at 78).

III, Section 3 of the Pennsylvania Constitution, respectively (hereinafter "Article III process"). Pa. Const. art. III, §§ 1, 3. Licensees filed New Matter in response to Defendants' Motion to Supplement the POs objecting to the supplemental PO on the basis of Rule 1028(b) of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P. No. 1028(b), and asserting, *inter alia*, that the equitable doctrine of laches bars Defendants' allegation that Act 5 of 1997 was enacted in violation of Article III of the Pennsylvania Constitution. (New Matter ¶¶ 10-13.)

The doctrine of laches bars relief when the responding party establishes: "a) a delay arising from [complainant's] failure to exercise due diligence; and, b) prejudice to the [responding party] resulting from the delay." Sprague v. Casey, 550 A.2d 184, 187 (Pa. 1988). In Stilp v. Hafer, 718 A.2d 290, 291-92 (Pa. 1998), our Supreme Court was confronted with an Article III process challenge to a statute enacted eight years prior to the initiation of litigation. The appellee in Stilp alleged that the action was barred by laches. Id. The Court agreed with the appellee and held "that the doctrine of laches may bar a challenge to a statute based upon procedural deficiencies in its enactment" and, upon finding that the appellants did not act diligently, which prejudiced the appellees, denied the appellants relief on the basis of laches. Id. at 294.

Laches is not the only bar to challenges to legislation many years after its enactment. For example, in Sernovitz v. Dershaw, 127 A.3d 783 (Pa. 2015), the Supreme Court did not employ a laches analysis in a single-subject rule challenge to a statute enacted 22 years prior to the initiation of the litigation in part because it was not clear that plaintiffs had failed to act in a timely manner. Although laches did not apply, the Court nevertheless barred the process challenge because of public reliance on the statute, explaining:

22

[t]he amount of time that has passed since enactment is a material consideration because the longer an act has been part of the statutory law and relied on by the public and the government, the more disruption to society and orderly governance is likely to follow from its invalidation. Where, as here, such reliance has continued for more than 20 years, a presumption naturally arises that any process challenge is too stale to be cognizable regardless of whether the challengers exercised reasonable diligence.

Id. at 792.

Act 5 of 1997 was enacted on April 22, 1997, almost 18 years prior to Defendants raising their Article III process challenge in common pleas on March 25, 2015. Defendants were involved in implementing the relevant provisions of the UFA since 1997 and did not challenge the procedure upon which these provisions were enacted for 18 years. Regardless of whether we apply the doctrine of laches or the Supreme Court's holding in Sernovitz, the result is the same: Defendants' Article III process challenge is stale, and we will not address whether Act 5 of 1997 violates the single-subject rule or original purpose rule of Article III.[15]

### 4.    High Public Official Immunity to Statutory Claims

Common pleas held that Sheriff Anthony is qualified for high public official immunity and is, therefore, insulated from all liability for the complained of acts in Licensees' Complaint. (Op. at 7-8.) On appeal, Licensees contend that the doctrine of high public official immunity is unconstitutional, inapplicable to the statutory claims under the UFA, and that Defendants' POs asserting immunity

---

[15] Because we conclude that the issue raised in Defendants' supplemental PO is untimely, we need not address Licensees' arguments that the supplemental PO should not have been accepted by common pleas.

defenses should not have been considered because immunity cannot be raised by preliminary objection.

We initially address whether common pleas erred by addressing Defendants' immunity defenses because they were improperly raised in the POs. Rule 1030(a) of the Pennsylvania Rules of Civil Procedure provides: "[e]xcept as provided by subdivision [not relevant here], **all affirmative defenses including** . . . **immunity** from suit . . . **shall be pleaded** in a responsive pleading under the heading **"New Matter."** Pa. R.C.P. No. 1030 (emphasis added). While the proper way to plead the affirmative defense is in New Matter,

> this Court has created limited exceptions to this rule. First, a party may raise the affirmative defense of immunity as a preliminary objection where it is **clearly applicable on the face of the complaint**; that is, that a cause of action is made against a governmental body and it is apparent on the face of the pleading that the cause of action does not fall within any of the exceptions to governmental immunity. Second, where a party erroneously asserts an immunity defense in a preliminary objection, the **failure of the opposing party to file a preliminary objection** to the defective preliminary objection in the nature of a motion to strike for lack of conformity to law **waives the procedural defect** and allows the trial court to rule on the immunity defense.

Orange Stones Company v. City of Reading, 87 A.3d 1014, 1022 (Pa. Cmwlth. 2014) (internal citations omitted) (emphasis added). Because it is clear from the face of the Complaint that immunity is applicable, and Licensees did not file preliminary objections to the Defendants' POs, common pleas did not err in addressing the POs alleging immunity defenses.[16] We shall proceed to Licensees' argument that high public official immunity is not applicable here.

---

[16] Licensees filed an Answer to Defendants' POs and did not object to Defendants raising the defense of immunity as a preliminary objection in their Answer. (R.R. at 88a-98a.)

24

The Pennsylvania Supreme Court set forth the common law doctrine of high public official immunity as follows:

> [T]he doctrine of absolute privilege for high public officials, as its name implies, is unlimited and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, within his jurisdiction.
>
> The doctrine of absolute privilege rests upon the * * * idea that conduct which otherwise would be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation. This sweeping immunity is not for the benefit of high public officials, but for the benefit of the public. . . .
>
> As such, absolute immunity for high public officials from civil liability is the only legitimate means of removing any inhibition which might deprive the public of the best service of its officers and agencies. Even though the innocent may sometimes suffer irreparable harm, it has been found to be in the public interest and therefore sounder and wiser public policy to 'immunize' public officials . . . .

Lindner v. Mollan, 677 A.2d 1194, 1195-96 (Pa. 1996) (internal quotations and citations omitted). An official is a high public official if the person is involved in state-wide policymaking functions and who is charged with the "responsibility for independent initiation of administrative policy regarding some sovereign function of state government." Yakowicz v. McDermott, 548 A.2d 1330, 1332 (Pa. Cmwlth. 1988) (citations omitted). Although the Supreme Court in Lindner addressed a slander and libel action, we have said that "the doctrine of high public official immunity is applicable to *actions* by public officials, not just defamatory statements," Osiris Enterprises v. Borough of Whitehall, 877 A.2d 560, 567 (Pa.

25

Cmwlth. 2005) (emphasis in original), and courts applied the doctrine to a variety of tort actions. See, e.g., Durham v. McElynn, 772 A.2d 68, 70 (Pa. 2001) (holding that a district attorney is immune from tort liability for violating the constitutional rights of a criminal defendant under the doctrine of high public official immunity); Feldman v. Hoffman, 107 A.3d 821 (Pa. Cmwlth. 2014) (applying the doctrine to claims of conversion and intentional infliction of emotional distress against a coroner).

While high public officials enjoy broad immunity under common law, Article I, Section 11 of the Pennsylvania Constitution provides the General Assembly with the power to provide for a cause of action previously barred by common law. Pa. Const. art I, § 11 ("Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct"). In Dorsey v. Redman, 96 A.3d 332, 340 (Pa. 2014), our Supreme Court noted that "[o]ur Constitution neither prohibits nor grants immunity to the Commonwealth, but vests authority in the General Assembly to determine the matters in which the government shall be immune." Thus, even if a public official is immune at common law from tort liability, the General Assembly may, pursuant to its power under the Constitution, enact legislation that affords immunity, removes immunity, or "creates a targeted form of accountability resting outside of the scope of . . . immunity." Dorsey, 96 A.3d at 341.

To determine if the General Assembly intended high public official immunity to apply to Section 6111(i) of the UFA, we turn, once again, to the rules of statutory construction. In so doing, we are aware that "[t]he best indication of the legislature's intent is the plain language of the statute." Dorsey, 96 A.3d at 340. "When the words of a statute are clear and free from all ambiguity, the letter

26

of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b).

The relevant portion of Section 6111(i) of the UFA provides:

> In addition to any other sanction or penalty imposed by this chapter, **any person**, licensed dealer, **State or local governmental agency or department** that violates this subsection shall be liable in civil damages in the amount of $1,000 per occurrence or three times the actual damages incurred as a result of the violation, whichever is greater, as well as reasonable attorney fees.

18 Pa. C.S. § 6111(i). In this provision, the General Assembly explicitly provided for limited liability for violation of the subsection. Specifically, liability may be imposed upon "any person . . . State or local governmental agency or department that violates" confidentiality. Id. County sheriffs are not specifically mentioned in the statute as an entity that may be liable; however, our construction of the term "local government agency" as used in Section 6111.1 of the UFA includes county sheriffs. Article IX, Section 4 of the Pennsylvania Constitution provides that county sheriffs are "county officers." Pa. Const. art. IX, § 4. Consistent with the fact that county sheriffs are "county officers" under the Constitution, we have held in interpreting an earlier version of the UFA that county sheriffs are local government agencies for purposes of the UFA. Gardner v. Jenkins, 541 A.2d 406, 408 (Pa. Cmwlth. 1988) (citing 2 Pa. C.S. § 101 (defining government agency as "[a]ny Commonwealth agency or any political subdivision or municipal or other local authority, *or any officer or agency* of any such political subdivision or local authority") (emphasis added)). Although Gardner has been superseded by the current version of the UFA, our interpretation that a county sheriff is a local government agency under the UFA in that case remains unchanged.

27

In <u>Hidden Creek, L.P. v. Lower Salford Township Authority</u>, 129 A.3d 602, 612-13 (Pa. Cmwlth. 2015), this Court considered an argument by a municipal authority that it was immune from liability under the Tort Claims Act for charging customers a rate in excess of the rate permitted by statute. The appellee in that case responded by arguing that the municipal authority was not immune due to a provision in the Municipalities Authorities Act that permitted "'[a]ny person questioning the reasonableness or uniformity of a rate fixed by an authority or the adequacy, safety and reasonableness of the authority's services, including extensions thereof, [to] bring suit against the authority in the court of common pleas of the county where the project is located....' [Section 5607(d)(9) of the Municipalities Authorities Act,] 53 Pa. C.S. § 5607(d)(9)." <u>Id.</u> at 611-12. This Court agreed with the appellee and held that the authority was not immune because

> [i]t is illogical to presume that where the General Assembly set forth stringent restrictions on tapping fees, providing extensive guidance for the determination of those fees and permitting legal challenges thereto, it intended that a municipal authority which violates the restrictions and collects excessive fees, should be immune from an action to recover those unlawfully assessed fees.

<u>Id.</u> at 612. We concluded that by enacting the Section 5607(d) of the Municipalities Authorities Act, the General Assembly created "a targeted form of accountability resting outside of the scope of governmental ... immunity." <u>Id.</u> at 613 (quoting <u>Dorsey</u>, 96 A.3d at 341).

We reach the same conclusion here with regard to Section 6111(i) of the UFA as this Court did in <u>Hidden Creek</u> for Section 5607(d) of the Municipalities Authorities Act. The General Assembly enacted extensive confidentiality requirements in the UFA and carefully crafted Section 6111(i) in such a way to

provide targeted liability against a local government agency, such as a county sheriff, for violating the confidentiality of a License holder. Because a county sheriff is a local government agency under the UFA, and the General Assembly utilized its constitutional authority to create a targeted form of liability that may be imposed upon a local agency that breaches the confidentiality of License-related information, we conclude that Sheriff Anthony is not entitled to high public official immunity should it be proved that he violated Section 6111(i) of the UFA.[17] It was therefore error to sustain Defendants' PO to Count I of the Complaint alleging that Sheriff Anthony is shielded by high public official immunity, and we reverse common pleas in this regard.

### 5. Liability of the Sheriff's Office

Licensees next argue that it was error to sustain Defendants' demurrer to all of the claims against the Sheriff's Office on the basis of the long-standing legal principle that a suit must only be brought against a legal entity capable of being sued. (Op. at 8.) Both Licensees and Defendants cite to Monastra v. Delaware County Sheriff's Office, 49 A.3d 556, 557 (Pa. Cmwlth. 2012), where a claim was filed against a sheriff's office and police department alleging that the entities abused their powers, trespassed, and conducted an unreasonable search and seizure. Relying on the Pennsylvania Rules of Civil Procedure, we held in Monastra that because the police department and sheriff's office were not legal

---

[17] Having concluded that high public official immunity does not apply, we do not reach Licensees' argument that high public official immunity is unconstitutional. See In re "B", 394 A.2d 419, 421-22 (Pa. 1978) ("when faced with an issue raising both constitutional and non-constitutional questions, we will make a determination on non-constitutional grounds, and avoid the constitutional question if possible").

29

entities separate from their political subdivisions, they were not proper parties to the action. Id. at 558. Licensees generally acknowledge that Monastra states a correct legal principle; however, Licensees allege in their Complaint that the Sheriff's Office is a local government agency and argue that the General Assembly specifically imposed liability on local government agencies and departments in Section 6111(i) of the UFA. (Compl. ¶ 75.) If the Sheriff's Office is not a legal entity, but merely a sub-unit of the County, it could not be directly sued. Monastra, 49 A.3d at 558. At this early stage, with no facts and only Licensees' allegation in their Complaint that the Sheriff's Office is a local government agency, (Compl. ¶ 75), it is premature for us to make this determination. Accordingly, we reverse the dismissal of Count II.

### 6. Summary of Statutory Claims

In sum, we conclude that common pleas erred when it sustained Defendants' POs to Counts I, II, and III of the Complaint because Licensees have stated a cause of action against the County, the Sheriff's Office, and Sheriff Anthony for violating Section 6111(i) of the UFA. Common pleas also erred when it sustained Defendants' PO alleging that Sheriff Anthony was entitled to high public official immunity. Finally, we conclude that because Defendants waited 18 years to raise an Article III process challenge to Act 5 of 1997, that challenge is not reviewable.

### C. Claims Under Common Law

In addition to the statutory claims discussed above, Counts V, VII, and part of Count VI of the Complaint allege common law claims. Count V alleges that by disclosing License-related information via postcard, Defendants "violated

[Licensees'] right to privacy and invaded their seclusion, solitude, and private affairs. . . ." (Compl. ¶ 86.) Licensees allege that their right to privacy comes from both Section 6111(i) of the UFA and from the Right to Keep and Bear Arms.[18] In Counts VI and VII, Licensees respectively assert claims for breach of fiduciary duties and conversion against Defendants for Defendants' failure to refund the $1.50 portion of the License fee specified for processing renewal notices.[19] Common pleas did not address the substance of Counts V and VII, but instead held that Defendants were immune from liability for the alleged actions pursuant to the Tort Claims Act. (Op. at 9.) Common pleas also did not address Licensees' claim for breach of fiduciary duties separate from Licensees' claim under Section 6109(h)(1) of the UFA, which it dismissed by holding that Section 6109(h)(1) does not provide a private right of action. (Op. at 10.)

---

[18] The Right to Keep and Bear Arms is found in both the Second Amendment to the United States Constitution and Article I, Section 21 of the Pennsylvania Constitution. U.S. Const. amend. II ("A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed"); Pa. Const. art. 1, § 21 ("The right of the citizens to bear arms in defen[s]e of themselves and the State shall not be questioned"). The United States Supreme Court has carved out "zones of privacy" created by specific constitutional guarantees, Paul v. Davis, 424 U.S. 693, 712 (1976), however, we note that neither the United States Constitution nor the Pennsylvania Constitution have been construed to provide an individual right to carry a firearm concealed on one's person or in a vehicle as are implicated by the licensing provisions of the UFA at issue here. See Caba v. Weaknecht, 64 A.3d 39, 53 (Pa. Cmwlth. 2013) (rejecting a constitutional challenge to the licensing provisions of Section 6109 of the UFA, 18 Pa. C.S. § 6109); Commonwealth v. McKown, 79 A.3d 678, 690 (Pa. Super. 2013) (rejecting a constitutional challenge to the criminal penalties associated with violating the licensing provisions of the UFA set forth in Section 6106 of the UFA, 18 Pa. C.S. § 6106).

[19] Licensees also argue in their brief that they have a claim for unjust enrichment against Defendants because retaining fees specified for processing renewal notices without sending such notices would lead to the Defendants receiving a benefit that would be inequitable for it to retain. (Licensees' Br. at 40-41.) Because this allegation was not pleaded in Licensees' Complaint, we cannot consider it here.

### 1.     Immunity Under the Tort Claims Act

Licensees argue on appeal that common pleas erred by holding that their invasion of privacy and conversion claims were barred by the Tort Claims Act because both fall under a recognized exception to immunity. The Tort Claims Act provides local agencies governmental immunity from liability for any damages they cause to a person or property, subject to certain exceptions. 42 Pa. C.S. § 8541. The exceptions listed in Section 8542(a) of the Tort Claims Act allow for liability if: (1) the damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person without immunity under Section 8541; *and* (2) the injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). 42 Pa. C.S. § 8542(a).

Licensees argue in their brief that the Tort Claims Act does not bar liability for their invasion of privacy claim because disclosing confidential License-related information is a crime. (Licensees' Br. at 51-52.) Pursuant to Section 8542(a)(2) of the Tort Claims Act, liability is not limited if the conduct at issue "constitutes a crime, actual fraud, actual malice, or willful misconduct." 42 Pa. C.S. § 8542(a)(2). However, Licensees did not allege that Defendants' actions were crimes in the Complaint. In Garrett by Garrett v. Moyston, 562 A.2d 386, 389 (Pa. Cmwlth. 1989), we held that

> [a] complaint in which a plaintiff seeks to recover from a local agency will be barred by governmental immunity unless the complaint: 1) alleges that the injury was caused by an act of a local agency employee which constituted a crime, actual fraud, actual malice or willful misconduct; or 2) sets forth a cause of action pursuant to Section 8542 of the [Tort Claims Act, 42 Pa. C.S. § 8542].

32

Id. Licensees have not alleged that Defendants committed a crime, actual fraud, actual malice, or willful misconduct.[20] Because, under the facts alleged, Defendants are immune from liability for Licensees' invasion of privacy claim, we conclude that common pleas did not err in sustaining Defendants' POs in this regard.

Licensees next argue that their conversion claim, in which they allege that $1.50 of the $19 License fee they paid to the Sheriff's Office for the purposes of processing a renewal notice pursuant to Section 6109(h)(1) of the UFA must be refunded, falls within an exception from immunity under the Tort Claims Act. Licensees point to the personal property exception, which provides in relevant part:

> **(b) Acts which may impose liability.--**The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
> . . . .

---

[20] Licensees argue in their brief that revealing confidential information is a crime under Section 6111(g)(3.1), 18 Pa. C.S. § 6111(g)(3.1). (Licensees' Br. at 51-52.) Section 6111(g)(3.1) provides:

> Any person, licensed dealer, licensed manufacturer or licensed importer who knowingly and intentionally obtains or furnishes information collected or maintained pursuant to section 6109 for any purpose other than compliance with this chapter or who knowingly or intentionally disseminates, publishes or otherwise makes available such information to any person other than the subject of the information commits a felony of the third degree.

Id. Even if Licensees had specifically alleged a criminal violation in the Complaint, we disagree with Licensees' position that Defendants could be criminally liable under this section for sending the un-enveloped postcard to Licensees. As discussed *infra*, Sheriff Anthony and the County are local government agencies under Section 6111(i) of the UFA. Unlike Section 6111(i) of the UFA, which provides for civil liability to both participants in the firearms market and government actors involved in the regulation thereof, Section 6111(g)(3.1) of the UFA provides for criminal penalties for market participants only. No criminal penalties are contemplated in Section 6111(g)(3.1) for government actors.

*(2) Care, custody or control of personal property.*--The care, custody or control of personal property of others in the possession or control of the local agency. The only losses for which damages shall be recoverable under this paragraph are those property losses suffered with respect to the personal property in the possession or control of the local agency.

42 Pa. C.S. § 8542(b)(2) (emphasis in the original). This exception, like the others, is to be narrowly construed. Simko v. County of Allegheny, 869 A.2d 571, 574 (Pa. Cmwlth. 2005).

The $1.50 at issue was legally transferred from Licensees to the Sheriff's Office years prior to the alleged conversion. The License application fee, of which the $1.50 fee is a portion, must be paid five years, less 60 days, prior to the time sheriffs are to send a License renewal application. See 18 Pa. C.S. § 6109(f)(1) (providing that a License is valid for five years); 18 Pa. C.S. § 6109(f)(2) (providing that an application for renewal of license shall be sent "60 days prior to the expiration of each [L]icense"). Once the License application fee is paid, the $1.50 is no longer the personal property of Licensees. Accordingly, the exception in Section 8542(b)(2) of the Tort Claims Act does not apply and common pleas did not err in sustaining Defendants' POs alleging that the County is immune to Licensees' conversion claim.

Further, because Licensees point to no provision under Section 8542 of the Tort Claims Act applicable to their fiduciary duty claim, and we can find none, we also conclude that Defendants are immune from Licensees' breach of fiduciary duty claim and common pleas did not err in dismissing Count VI of Licensees' Complaint.

In sum, we affirm common pleas' Order insofar as it sustains Defendants' POs alleging that Defendants are immune pursuant to the Tort Claims Act to

34

Licensees' claims of invasion of privacy, breach of fiduciary duty, and conversion in Counts V, VI, and VII of Licensees' Complaint, respectively.

### 2. Leave to Amend

Licensees next argue that common pleas erred and abused its discretion by dismissing their common law claims without providing leave to amend the Complaint. However, Licensees did not request leave to amend the Complaint and there is no requirement that a court *sua sponte* grant leave to amend. See Werner v. Zazyczny, 681 A.2d 1331, 1338 (Pa. 1996) (stating that "Appellant fails to cite to any case law, and we can find none, requiring a court to *sua sponte* order or require a party to amend his pleading"). Licensees were permitted to respond to Defendants' POs by filing an amended Complaint as of right or to ask for leave to amend. See Rules 1028(c)(1) and 1033 of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P. No. 1028(c)(1) ("A party may file an amended pleading as of course within twenty days after service of a copy of preliminary objections"); Pa. R.C.P. No. 1033 ("A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, add a person as a party, correct the name of a party, or otherwise amend the pleading"). Licensees requested permission from the Court to file an amended *Answer* to Defendants' POs, (R.R. at 299a-305a), but absent from the record is a request to file an amended *Complaint*.[21] Thus, we observe no error or abuse of discretion in common pleas not granting relief that was not requested.

---

[21] The only instance found in the record where Licensees mentioned amending the Complaint to common pleas was in their brief in opposition to Defendants' POs. There, Licensees summarized the legal standards applicable to judicial disposition of preliminary objections by stating, *inter alia*, that "if preliminary objections are sustained, the remedy is not

*(Continued…)*

## D.     Declaratory and Injunctive Relief

Finally, Licensees argue that common pleas erred when it sustained Defendants' PO to their requests for equitable relief in Count VIII of the Complaint.  Common pleas sustained Defendants' POs based on its conclusion that "[t]he factual basis for the requests is the same conduct [it] [] concluded does not support causes of action for monetary damages," and that Licensees did not meet their burden to "plead facts that indicate a clear right to relief."  (Op. at 13-14.)

In their Complaint, Licensees seek the following equitable relief:  (1) "an injunction prohibiting Defendants and their employees from disseminating any confidential [License] application information in violation of [Section 6111(i) of the UFA]"; (2) "an injunction requiring Defendants to properly train their employees regarding the confidentiality of [License] application information under [Section 6111(i) of the UFA]"; (3) "an injunction requiring Defendants to properly utilize the $1.50 for purposes of issuing renewal notifications pursuant to [Section 6109(f)(2) of the UFA]"; (4) a declaration that the policy and practice of "requiring [License] applicants to provide references on the [License] Application and contacting those references" violates Section 6111(i) of the UFA; and (5) "an injunction prohibiting Defendants from enforcing the policy and practice" of requiring License applicants to provide references and contacting said references. (Compl. ¶¶ 101- 04.)

---

dismissal of the Complaint but to allow the filing of an amended complaint."  (R.R. at 201a (citing Jones v. City of Philadelphia, 893 A.2d 837, 846 (Pa. Cmwlth. 2006)).)  Stating a legal proposition in a brief is not the same as requesting leave to amend.

Though ultimately, the party seeking injunctive relief must prove, with probative evidence that the "right to relief is clear," a remedy at law is insufficient, and "greater injury will result from refusing rather than granting the relief requested," a court of common pleas should only sustain a preliminary objection in the nature of a demurrer to a claim for injunctive relief if the court "find[s] that the petition is clearly insufficient to establish a right to injunctive relief, and any doubt must be resolved in overruling the demurrer." P.J.S. v. Pennsylvania State Ethics Commission, 669 A.2d 1105, 1113 (Pa. Cmwlth. 1996) (quoting Merchant v. State Board of Medicine, 638 A.2d 484, 487 (Pa. Cmwlth. 1994) (citations omitted)).

First, based on the reasoning above with regard to Counts I, II, and III, we conclude that it is not clear that Licensees will not be able to prove that Defendants violated Section 6111(i) of the UFA and, therefore, common pleas erred when it dismissed Licensees' request for injunctive relief related thereto. If Licensees are able to prove that Defendants violated Section 6111(i), an injunction prohibiting the disclosure of confidential License-related information and requiring training of employees may be warranted.

Second, Licensees argue that in enacting Section 6109(h) of the UFA, the General Assembly required sheriffs to use $1.50 of the $19 Licensee fee to process renewal notices, and based on the mandatory nature of Section 6109(f)(2) of the UFA, Licensees have a clear right to an injunction requiring Defendants to utilize $1.50 of the License fee for processing renewal notices. However, consistent with our discussion above, we do not construe Sections 6109(h) or 6109(f)(2) as imposing a mandatory duty with regard to the use of the $1.50. Accordingly, we conclude that common pleas did not err by sustaining Defendants' PO related to

Licensees' request for injunctive relief requiring Defendants to use $1.50 of the License application fees to issue renewal notifications.

Finally, we agree with common pleas that Defendants' PO to Licensees' request for declaratory and injunctive relief related to Defendants' alleged policy and practice of requiring License applicants to provide references and to contact said references must be sustained. Section 6109(d) provides:

> **(d) Sheriff to conduct investigation.--**The sheriff to whom the application is made shall:
> (1) investigate the applicant's record of criminal conviction;
> (2) investigate whether or not the applicant is under indictment for or has ever been convicted of a crime punishable by imprisonment exceeding one year;
> (3) investigate whether the applicant's character and reputation are such that the applicant will not be likely to act in a manner dangerous to public safety;
> (4) investigate whether the applicant would be precluded from receiving a license under subsection (e)(1) or section 6105(h) (relating to persons not to possess, use, manufacture, control, sell or transfer firearms); and
> (5) conduct a criminal background, juvenile delinquency and mental health check following the procedures set forth in section 6111 (relating to sale or transfer of firearms), receive a unique approval number for that inquiry and record the date and number on the application.

18 Pa. C.S. § 6109(d). Section 6109(e) prohibits sheriffs from granting a License to any of the following:

> (i)  An individual whose character and reputation is such that the individual would be likely to act in a manner dangerous to public safety.
> (ii)  An individual who has been convicted of an offense under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act.

(iii)    An individual convicted of a crime enumerated in section 6105.

(iv)    An individual who, within the past ten years, has been adjudicated delinquent for a crime enumerated in section 6105 or for an offense under The Controlled Substance, Drug, Device and Cosmetic Act.

(v)    An individual who is not of sound mind or who has ever been committed to a mental institution.

(vi)    An individual who is addicted to or is an unlawful user of marijuana or a stimulant, depressant or narcotic drug.

(vii)    An individual who is a habitual drunkard.

(viii)    An individual who is charged with or has been convicted of a crime punishable by imprisonment for a term exceeding one year except as provided for in section 6123 (relating to waiver of disability or pardons).

(ix)    A resident of another state who does not possess a current license or permit or similar document to carry a firearm issued by that state if a license is provided for by the laws of that state, as published annually in the Federal Register by the Bureau of Alcohol, Tobacco and Firearms of the Department of the Treasury under 18 U.S.C. § 921(a)(19) (relating to definitions).

(x)    An alien who is illegally in the United States.

(xi)    An individual who has been discharged from the armed forces of the United States under dishonorable conditions.

(xii)    An individual who is a fugitive from justice. This subparagraph does not apply to an individual whose fugitive status is based upon nonmoving or moving summary offense under Title 75 (relating to vehicles).

(xiii)    An individual who is otherwise prohibited from possessing, using, manufacturing, controlling, purchasing, selling or transferring a firearm as provided by section 6105.

(xiv)    An individual who is prohibited from possessing or acquiring a firearm under the statutes of the United States.

18 Pa. C.S. § 6109(e).

Defendants' demurrer to Count VIII alleges that Defendants' policy of requiring references was enacted pursuant to Sheriff Anthony's statutory duty to investigate License applicants and that the manner in which the investigation is conducted is within his discretion. (POs ¶ 69.) Licensees argue in response that disclosure of a License applicant's name to references breaches the confidentiality

39

required by Section 6111(i) of the UFA, and that Defendants may determine a License applicant's reputation and character without violating confidentiality by searching court dockets to discover any civil or criminal matters brought against the applicant. We agree with Defendants. While a sheriff could determine that an individual falls into some of the categories listed in Section 6109(e) by searching court dockets and criminal records, such a review would not necessarily return information regarding whether an individual is "not of sound mind"; "addicted to or is an unlawful user of marijuana or a stimulant, depressant or narcotic drug"; "habitual drunkard"; or "whose character and reputation is such that the individual would be likely to act in a manner dangerous to public safety." 18 Pa. C.S. § 6109(e)(i), (v), (vi), (vii).

The UFA's statutory scheme places sheriffs in the position of both safeguarding License applicants' confidentiality and protecting the public by making an informed determination that an applicant is qualified to receive a License. Sheriffs and the State Police have, in a uniform manner throughout the Commonwealth, struck the balance by requiring License applicants to self-verify that they meet the requirements of Section 6109(e) of the UFA and to provide two references that are not members of the applicants' family that can speak to an individual's qualifications.[22] (Application for a Pennsylvania License To Carry Firearms, Compl. Ex. B.) We see no legal infirmity in the balance struck by law enforcement. Section 6109(c) of the UFA requires License applicants to sign a statement on the application form that authorizes "the sheriff, or his designee" to

_____

[22] License applications are, pursuant to Section 6109(c) of the UFA, "uniform throughout this Commonwealth and [are] on a form prescribed by the Pennsylvania State Police." 18 Pa. C.S. § 6109(c). Section 6109(c) requires License applicants to self-verify that they are qualified to receive a License, but it does not require the taking of references. Id.

40

inspect "records or documents relevant to information required for this application." 18 Pa. C.S. § 6109(c). By providing two references and signing the application form, an applicant authorizes the limited disclosure of their name and the fact they are seeking a License to the two persons named as references. Thus, because the disclosure to two references is required in order for sheriffs to conduct an investigation and to make an informed determination regarding a License applicant's qualifications, and disclosure to references is authorized by applicants, we conclude that Licensees have not sufficiently alleged their right to the injunctive relief requested.

## III.   CONCLUSION

For the foregoing reasons, common pleas' Order is: (1) reversed insofar as it sustains Defendants' POs to Licensees' claim under Section 6111(i) of the UFA against Sheriff Anthony found in Count I of the Complaint; (2) reversed insofar as it dismisses the allegations in Count II of the Complaint asserted against the Sheriff's Office; (3) reversed insofar as it sustains Defendants' PO to Licensees' claim under Section 6111(i) against the County found in Count III of the Complaint; (4) reversed insofar as it addresses claims asserted against Employee Does because common pleas lacked jurisdiction over these individuals; (5) affirmed insofar as it sustains Defendants' POs alleging that Defendants are immune to Licensees' claim for invasion of privacy found in Count V of the Complaint; (6) affirmed insofar as it sustains Defendants' PO to Licensees' claims asserted in Count VI under Section 6109(h) of the UFA because the statute does not provide a private cause of action for refund of the $1.50 renewal notice processing fee; (7) affirmed insofar as it dismisses Licensees' breach of fiduciary

41

duties claim asserted in Count VI; (8) affirmed insofar as it sustains Defendants' PO to Count VII of the Complaint alleging conversion of the $1.50 renewal notice processing fee; (9) affirmed insofar as it sustains Defendants' POs to Count VIII of the Complaint to the extent that it addresses Licensees' requests for injunctive and declaratory relief associated with Defendants' policy and practice of requiring applicants to provide references on License applications; (10) affirmed insofar as it sustains Defendants' POs to Count VIII of the Complaint to the extent that it addresses Licensees' request for an injunction requiring Defendants to use $1.50 of the License fee to send renewal notices; and (11) reversed insofar as it sustains Defendants' POs to the remaining requests for injunctive relief found in Count VIII of the Complaint.

 

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Doe 1, John Doe 2, John Doe 3   :
and Jane Doe 1,   :
           Appellants   :
  :
      v.   :   No. 1634 C.D. 2015
  :
Franklin County, Franklin County   :
Sheriff's Office, Franklin County   :
Sheriff Dane Anthony and Employee   :
John/Jane Does   :

# **O R D E R**

NOW, May 20, 2016, the Order of the Court of Common Pleas of the 39th Judicial District (Franklin County branch) (common pleas) in the above-captioned matter, is **AFFIRMED** in part and **REVERSED** in part, as follows:

(1)    Common pleas' Order sustaining the preliminary objections of Franklin County, Franklin County Sheriff's Office, and Franklin County Sheriff Dane Anthony (together, Defendants) to Count I of John Doe 1, John Doe 2, John Doe 3, and Jane Doe 1's (Licensees) Complaint, is REVERSED;

(2)    Common pleas' Order sustaining Defendants' preliminary objections to the claim asserted in Count II the Licensees' Complaint against Franklin County Sheriff's Office, is REVERSED;

(3)   Common pleas' Order sustaining Defendants' preliminary objections to Count III of Licensees' Complaint, is REVERSED;

(4)   Common pleas' Order sustaining Defendants' preliminary objections to all claims asserted in the Licensees' Complaint against Employee John/Jane Does, is REVERSED;

(5)   Common pleas' Order sustaining Defendants' preliminary objection to Count V of Licensees' Complaint alleging that Defendants are immune to Licensees' invasion of privacy claim, is AFFIRMED;

(6)   Common pleas' Order sustaining Defendants' preliminary objection to Count VI of Licensees' Complaint alleging that Licensees have not stated a cause of action under Section 6109(h) of the Pennsylvania Uniform Firearms Act of 1995, 18 Pa. C.S. § 6109(h), is AFFIRMED;

(7)   Common pleas' Order sustaining Defendants' preliminary objections to Count VI of Licensees' Complaint alleging that Defendants are immune to Licensees' breach of fiduciary duties, is AFFIRMED;

(8)   Common pleas' Order sustaining Defendants' preliminary objection alleging that Defendants are immune to Licensees' conversion claim in Count VII of Licensees' Complaint, is AFFIRMED;

(9)  Common pleas' Order sustaining Defendants' preliminary objections to Licensees' request for declaratory and injunctive relief associated with Defendants' policy of requiring references on License to Carry Firearm applications in Count VIII of Licensees' Complaint, is AFFIRMED;

(10) Common pleas' Order sustaining Defendants' preliminary objections to Licensees' request in Count VIII for an injunction requiring Defendants to use $1.50 of the License to Carry Firearms Fee to send renewal notices, is AFFIRMED; and

(11) Common pleas' Order sustaining Defendants' preliminary objections to Licensees' remaining request for injunctive relief, is REVERSED.

The matter is remanded for further proceedings.

Jurisdiction relinquished.

_____
**RENÉE COHN JUBELIRER,** Judge