**[J-44-2017]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| JOHN DOE 1, JOHN DOE 2, JOHN DOE 3 AND JANE DOE 1, | : | No. 120 MAP 2016 |
| | : | |
| | : | Appeal from the Order of the |
| Appellees | : | Commonwealth Court at No. 1634 CD |
| | : | 2015, dated May 20, 2016, Reversing in |
| | : | part and Affirming in part the Order of |
| v. | : | the Franklin County Court of Common |
| | : | Pleas, Civil Division, at No. 2014-4623, |
| | : | dated August 13, 2015 (exited August |
| FRANKLIN COUNTY, FRANKLIN | : | 17, 2015) and remanding. |
| COUNTY SHERIFF'S OFFICE, | : | |
| FRANKLIN COUNTY SHERIFF DANE | : | ARGUED: May 10, 2017 |
| ANTHONY AND EMPLOYEE JOHN/JANE | : | |
| DOES, | : | |
| | : | |
| Appellants | | |

**OPINION**


**JUSTICE DOUGHERTY**                    **DECIDED: November 22, 2017**

We granted discretionary review to determine whether the General Assembly abrogated high public official immunity when it enacted Section 6111(i) of the Pennsylvania Uniform Firearms Act (UFA), 18 Pa.C.S. §§6101-6187.[1]  We hold the General Assembly did not abrogate high public official immunity through Section 6111(i), and thus reverse the Commonwealth Court on this issue.[2]

---

[1] 1972, Dec. 6, P.L. 1482, No. 334, §1, effective June 6, 1973. Amended 1997, April 22, P.L. 73, No. 5, §1 (Act 5 of 1997).

[2] The Commonwealth Court's decision regarding other issues is not before us in this appeal.

Before explaining the factual background of this matter, we set forth the relevant statutory framework. Section 6111 of the UFA governs the sale or transfer of firearms generally, and subsection (i) of the statute relates specifically to the confidentiality of information provided by a potential purchaser or transferee who seeks to purchase, receive, or apply to carry a firearm. Section 6111(i) provides:

> **(i) Confidentiality**. — All information provided by the potential purchaser, transferee or applicant, including, but not limited to, the potential purchaser, transferee or applicant's name or identity, furnished by a potential purchaser or transferee under this section or any applicant for a license to carry a firearm as provided by section 6109 **shall be confidential and not subject to public disclosure**. In addition to any other sanction or penalty imposed by this chapter, **any person, licensed dealer, State or local governmental agency or department that violates this subsection shall be liable in civil damages** in the amount of $1,000 per occurrence or three times the actual damages incurred as a result of the violation, whichever is greater, as well as reasonable attorney fees.

18 Pa.C.S. §6111(i) (emphasis added).

Appellees John Doe 1, John Doe 2, John Doe 3 and Jane Doe 1 are adult individuals residing in Franklin County, Pennsylvania, who each applied for a license to carry a firearm (LTCF) by submitting an application to the Franklin County Sheriff's Department. Subsequently, appellees filed the underlying eight-count class action complaint against Franklin County (the County), the Franklin County Sheriff's Office (the Sheriff's Office), Sheriff Dane Anthony (Sheriff Anthony) (collectively, appellants), claiming, *inter alia*, violations of the confidentiality provision of Section 6111(i) and seeking damages.[3] Appellees alleged they and several other applicants received

---

[3] The Complaint also named as defendants several Jane and John Doe Employees of the Sheriff's Office (the Doe Employees) who were never served and did not enter their appearance in the litigation. The Complaint included claims pursuant to Section 6111(i) (continued…)

notification of the approval, renewal, denial or revocation of their LTCF applications from appellants via postcards sent through the United States Postal Service (USPS), and the postcards were not sealed in an envelope. *Complaint* at ¶¶ 3-10, 18-19, 21, 56-57. Appellees claimed the information visible on the postcards included the applicant's name, address and a statement of the approval, denial or revocation of the requested license. *Id.* at ¶¶ 18, 19. Appellees further claimed appellants issued renewal notices to current license holders via postcards sent through the USPS which stated "Pistol Permit—Our Records indicate that your Permit to Carry a Firearm will soon expire . . . ." *Id.* at ¶ 21. Appellees alleged, *inter alia*, appellants' use of postcards to notify LTCF applicants of the status of their applications resulted in the notices being "visible [to] all individuals processing, mailing and serving the mail, as well as, [to] any individual receiving the postcard at the address, who may or may not be the applicant or license holder." *Id.* at ¶ 22. Appellees claimed these actions constituted "public disclosure" in violation of Section 6111(i).

Central to this appeal is Count III of the Complaint, in which appellees specifically alleged Sheriff Anthony, in his management and leadership of the Sheriff's Office, "instituted and directed the disclosure of confidential LTCF application information to the public, employees of the County and Sheriff's Office not authorized under the UFA,

---

(…continued)

against the County (Count I), the Sheriff's Office (Count II), Sheriff Anthony (Count III), and the Doe Employees (Count IV). *Complaint* at ¶¶70-84. The Complaint included additional claims: Breach of Confidentiality/Invasion of Privacy against all appellants (Count V); Breach of 18 Pa.C.S. § 6109(h) (pertaining to fees for approval and renewal of LTCF) and Fiduciary Duties against the County, the Sheriff's Office and Sheriff Anthony (Count VI); Conversion against the County, the Sheriff's Office and Sheriff Anthony (Count VII); and Declaratory and Injunctive Relief against all appellants (Count VIII).

[USPS] employees and other third parties at the same address who use the same mailbox as the LTCF applicant in violation of 18 Pa.C.S. §6111(i)." *Id.* at ¶¶ 80, 82. Appellants filed numerous preliminary objections to the Complaint.[4] With regard to Count III, appellants sought dismissal of all claims against Sheriff Anthony on the basis that he is immune from suit as a high public official for any actions he took in his official capacity as Sheriff of Franklin County.[5] Preliminary Objections at ¶¶ 11-15.

The trial court sustained most of the preliminary objections and dismissed the entire complaint.[6] Relevant to this appeal, the court concluded Sheriff Anthony qualified

---

[4] Not relevant to this appeal are appellants' demurrers on the basis the Complaint was barred by the statute of limitations; appellees failed to aver facts to establish a violation of Section 6111(i) of the UFA; the Sheriff's Office cannot be sued as it is not a legal entity distinct from the County, and the County and Sheriff's Office are immune from suit under the Political Subdivision Tort Claims Act, 42 Pa.C.S. §§8541-8564 (Tort Claims Act). *See* Preliminary Objections to Complaint at ¶¶9-86, *citing* Pa.R.C.P. 1028(a)(4).

[5] As discussed in more detail *infra*, the doctrine of absolute immunity for high public officials is well established, *Matson v. Margiotti*, 88 A.2d 892 (Pa. 1952), and is intended to immunize high public officials from liability because they act in furtherance of interests important to society. The parties do not dispute in this appeal that Sheriff Anthony is a high public official.

[6] All members of the Court of Common Pleas of Franklin County recused themselves and Senior Judge Stewart L. Kurtz of the Court of Common Pleas of Huntingdon County presided over the matter. Senior Judge Kurtz sustained the demurrer with respect to all claims made against the Sheriff's Office (Counts II, V, VI, VII and VIII) on the basis that the Sheriff's Office is not a legal entity subject to suit. Trial Court Op. at 8. Additionally, the court sustained the demurrer to claims of invasion of privacy brought against the County and the Doe Employees (Counts V and VII) on the basis of sovereign immunity pursuant to the Tort Claims Act. *Id.* at 9-10, *citing* 42 Pa.C.S. §§8541-8550. The court also sustained the preliminary objection for failure to state a claim under Section 6109 of the UFA (Count VI), holding the statute did not create a private right to recover the LTCF application fee. *Id.* at 10. With respect to claims pursuant to Section 6111(i) (Counts I-IV), the court sustained the preliminary objections on the basis that appellees failed to plead sufficient facts to demonstrate appellants publicly disclosed any confidential information. *Id.* at 11-13. Lastly, the court sustained the preliminary objections to appellees' request for a permanent injunction (Count VIII) with respect to (continued…)

as a high public official, and was therefore immune from liability for any acts performed in his official capacity as sheriff. Trial Court Op. at 6, *citing Feldman v. Hoffman*, 107 A.3d 821, 827 (Pa. Cmwlth. 2014) (noting "the public interest is best served by granting broad immunity to high-ranking officers"). The court further found the acts challenged in the complaint were performed by Sheriff Anthony during the course of his official duties, thus triggering high public official immunity. *Id.*

In reaching its conclusion, the trial court considered whether the language in Section 6111(i) of the UFA somehow annulled the application of high public official immunity. Appellees argued Section 6111(i) permits a cause of action against any "person," and the sheriff, who is responsible for issuing LTCF licenses under the UFA, is a "person" and thus not immune from liability. However, the court held it was "not prepared to deny Sheriff Anthony the absolute immunity the common law of Pennsylvania affords to high public officials." Trial Court Op. at 7. The trial court further opined that had the legislature intended to eliminate high public official immunity in Section 6111(i), it could have done so "in language that was clear, specific and

_____

(…continued)
all appellants, finding appellees failed to plead sufficient facts to demonstrate a clear right to relief. *Id.* at 13-14. The court thus sustained at least one preliminary objection to each and every count of the Complaint, and dismissed the Complaint in its entirety on those grounds only. The court did not address the remaining preliminary objections, including that the Complaint lacked specificity and was time-barred under various statutes of limitations. Additionally, prior to ruling on the preliminary objections, the court permitted appellees to supplement them by adding a challenge to the constitutionality of Act 5 of 1997, which in part enacted Section 6111(i), pursuant to the single subject rule of Article III, Section 3 of the Pennsylvania Constitution and the original purpose rule of Article III, Section 1 of the Pennsylvania Constitution. PA. CONST., art. III, §§1, 3. The court never reached the constitutional claims as it dismissed the Complaint on other grounds. *Doe v. Franklin County*, 139 A.3d 296, 302-03 (Pa. Cmwlth. 2016).

unequivocal." *Id.* Accordingly, the trial court sustained the demurrer to Count III against Sheriff Anthony, ruling he was shielded from liability by high public official immunity.

On appeal, the Commonwealth Court reversed in part, affirmed in part and remanded the matter for further proceedings. *Doe v. Franklin Cty*, 139 A.3d 296, 300 (Pa. Cmwlth. 2016). Relevant to this appeal, the Commonwealth Court reversed the trial court's dismissal of Count III of the complaint against Sheriff Anthony.[7] The Commonwealth Court first rejected appellees' argument that the trial court should not have reached the issue of immunity because immunity is a defense which is properly raised in new matter, and not in preliminary objections. The Commonwealth Court noted appellees failed to file preliminary objections to challenge Sheriff Anthony's claim of immunity on this basis, and thus proceeded to decide the question of immunity on the merits. *Doe*, 139 A.3d at 313, *quoting Orange Stones Co. v. City of Reading*, 87 A.3d 1014, 1022 (Pa. Cmwlth. 2014) ("where a party erroneously asserts an immunity defense in a preliminary objection, the **failure of the opposing party to file a preliminary objection** to the defective preliminary objection in the nature of a motion to

---

[7] The Commonwealth Court also reversed the trial court's order sustaining preliminary objections with respect to Counts I, II and IV alleging violations of Section 6111(i) of the UFA by the County, the Sheriff's Office and the Doe Employees, and Count VIII in which appellees sought declaratory and injunctive relief against appellants and the Doe Employees, remanding the matter for further proceedings on these claims. The Commonwealth Court affirmed the trial court's order sustaining preliminary objections and dismissing Counts V, VI and VII of the complaint. *Doe*, 139 A.3d at 322-23.

We note parenthetically the Commonwealth Court twice referred incorrectly to the count against Sheriff Anthony as Count I instead of Count III. *Id.* at 315 ("[i]t was therefore error to sustain Defendants' PO to Count I of the Complaint alleging that Sheriff Anthony is shielded by high public official immunity, and we reverse common pleas in this regard."); *id.* at 322 (referring to Sheriff Anthony's claim of high public official immunity as a defense to Count I).

strike for lack of conformity to law **waives the procedural defect** and allows the trial court to rule on the immunity defense.") (emphasis in original).

The Commonwealth Court next provided a background of high public official immunity, acknowledging it applies not only to statements by protected individuals but also to their actions. *Id.* at 313-14, *citing Lindner v. Mollan*, 677 A.2d 1194 (Pa. 1996) (immunity applied as defense to claims of slander and libel); *Durham v. McElynn*, 772 A.2d 68, 69 (Pa. 2005) ("[i]t has long been held that high public officials are immune from suits seeking damages for actions taken or statements made in the course of their official duties."); *Osiris Enterprises v. Borough of Whitehall*, 877 A.2d 560, 567 (Pa. Cmwlth. 2001) (acknowledging doctrine of high public official immunity applies to actions by public officials, not just statements). The court then observed that although high public officials may ordinarily enjoy immunity, the Pennsylvania Constitution at Article I, Section 11, permits the General Assembly to establish a cause of action otherwise barred at common law. *Id.* at 314, *quoting* PA. CONST. art. I, §11 ("Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct."). The court relied on this Court's decision in *Dorsey v. Redman*, 96 A.3d 332 (Pa. 2014), which recognized "[o]ur Constitution neither prohibits nor grants immunity to the Commonwealth, but vests authority in the General Assembly to determine the matters in which the government shall be immune." *Id.*, *quoting Dorsey*, 96 A.3d at 340.

The Commonwealth Court then engaged in a statutory construction analysis of Section 6111(i) to determine whether the General Assembly intended high public officials to be immune from liability arising from violations of it. Examining the language

of Section 6111(i), specifically its provision that "any person, licensed dealer, State or local governmental agency or department that violates this subsection shall be liable in civil damages," the court found the General Assembly "explicitly provided for limited liability for a violation of" Section 6111(i). *Id.* The Commonwealth Court concluded the term "local government agency" as used in the statute to describe those who might be held liable for violating the UFA includes county sheriffs as defined by the Pennsylvania Constitution.[8] *Id.*, *citing* PA. CONST., art IX, §4 (providing county sheriffs are "county officers"). The court noted it had previously determined county sheriffs are "local government agencies" when interpreting an earlier version of the UFA. *Id.* at 314-15, *citing Gardner v. Jenkins*, 541 A.2d 406, 408 (Pa. Cmwlth. 1988) (recognizing Title 2 regulating Administrative Law defined local government agency as "[a]ny Commonwealth agency or any political subdivision or municipal or other local authority or any officer or agency of any such political subdivision of local authority" for purposes of deciding propriety of mandamus action seeking order compelling sheriff to issue LTCF). The court opined the General Assembly intended Section 6111(i) of the UFA to override high public official immunity and permit "targeted liability against a local government agency," which includes the county sheriff, for a breach of confidentiality of an LTCF holder or applicant. *Id.* at 315, *citing Hidden Creek, L.P. v. Lower Salford Township Authority*, 129 A.3d 602, 612-13 (Pa. Cmwlth. 2015) (General Assembly created targeted exception to governmental immunity in Section 5607 of the

---

[8] The Commonwealth Court incorrectly cited Section 6111.1 of the UFA when interpreting the term "local government agency." Section 6111.1 applies to Pennsylvania State Police, and does not include, define or reference the term "local government agency" anywhere in its text.

Municipalities Authority Act, which explicitly authorizes "[a]ny person questioning the reasonableness or uniformity of a rate fixed by an authority . . . [to] bring suit against the authority"). The Commonwealth Court thus concluded Sheriff Anthony was not entitled to high public official immunity to shield him from suit in the event it is demonstrated his actions violated Section 6111(i), and the trial court erred in dismissing Count III of the Complaint on this basis.

Appellants filed a petition for allowance of appeal and we granted review, limited to the discrete issue of "[w]hether the General Assembly intended to abrogate high public official immunity when it enacted 18 Pa.C.S. §6111(i)." *Doe v. Franklin County, et al.*, 161 A.3d 800 (Pa. 2016).

In seeking reversal of the Commonwealth Court's decision and arguing Sheriff Anthony is protected from suit by high public official immunity, appellants note the Commonwealth Court acted contrary to precedent in creating an exception to the absolute immunity historically applied to high public officials. Appellants claim the Commonwealth Court's denial of immunity is the equivalent of a punishment against sheriffs who are acting in good faith in their official duties, and will consequently expose sheriffs across the Commonwealth to liability for actions taken in good faith.

Appellants specifically argue high public official immunity applies equally to actions and speech of public officials, and thus is not limited to defamation claims, despite appellees' assertions to the contrary. Appellants further argue high public official immunity is unlimited, acting to exempt a high public official from all civil suits for damages arising out of official business, and thus precludes liability under Section 6111(i). Appellants' Brief at 17, *quoting Lindner*, 677 A.2d at 1195 ("Absolute immunity

'exempts a high public official from all suits for damages,' even for 'statements or actions motivated by malice.'"). Appellants further submit it is undisputed that Sheriff Anthony qualifies as a high public official and, as such, the immunity should protect him from appellees' allegations that he violated Section 6111(i) of the UFA. Appellants claim immunity is necessary because a sheriff "should not be under an apprehension that the motives that control his official conduct may at any time become the subject of inquiry in a civil suit for damages." *Id.*at 18, *citing Matson v. Margiotti*, 88 A.2d 892, 896 (Pa. 1952), (internal citations omitted). Appellants insist appellees have failed to demonstrate the General Assembly intended to abrogate high public official immunity with Section 6111(i), and appellees' argument the application of immunity is contrary to the public interest would end all governmental immunity if taken to its logical conclusion. Appellants' Reply Brief at 6-7.

Appellants further argue this Court has reinforced high public official immunity, holding the General Assembly did not abrogate it by enacting the Tort Claims Act, and an employee of a local government agency can be held liable pursuant to the Torts Claim Act only in cases of willful misconduct, or when that employee does not qualify as a high public official. *See Lindner*, 677 A.2d at 1197 (noting employees of local governmental agencies are subject to liability only when they do not qualify as "high public officials" or in cases of willful misconduct). Appellants submit the immunity may not be waived by implication and yet this is precisely how the Commonwealth Court found waiver in Section 6111(i).

Appellants further reject the general proposition advanced by appellees that immunity has been abolished since the 1970s, and explain that when this Court

purported to abolish immunity in case law, the General Assembly acted affirmatively to reinstate it legislatively. *See generally Ayala v. Phila. Bd. of Pub. Educ.*, 305 A.2d 877, 878-881 (Pa. 1973), *superseded by statute as recognized by Dorsey*, 96 A.3d 332; *Mayle v. Pa. Dep't of Highways*, 388 A.2d 709, 720 (Pa. 1978), *superseded by statute as recognized by Kapil v. Assoc. of Pa. State College & Univ. Faculties*, 470 A.2d 482 (Pa. 1983). The Commonwealth, as *amicus* in support of appellants, observes high public official immunity was rooted in the common law, but also has a statutory basis, and remains in place except where the General Assembly expressly waives it. Commonwealth's Amicus Brief at 4, *citing* 1 Pa.C.S. §2310 ("Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity . . ."). The Commonwealth further observes Article I, Section 11 of the Pennsylvania Constitution specifically provides "[s]uits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct." *Id.* Appellants and the Commonwealth emphasize the required express waiver of immunity does not exist in Section 6111(i).

Appellants further note legislative history regarding the enactment of Section 6111(i) indicates the General Assembly never discussed the civil liability portion of the statute, and accordingly, there is nothing in that history to support a finding that the General Assembly intended to abrogate high public official immunity. Appellants' Brief at 22. Thus, appellants argue a determination that Section 6111(i) abrogated immunity

is essentially a holding the General Assembly did so *sub silentio*, which is contrary to this Court's precedent as well as statutory law. *Id.* at 22-23, *citing Lindner,* 677 A.2d at 1196 (noting this Court "has never called into question, much less overruled" high public official immunity). *See also* 1 Pa.C.S. §2310. Similarly, appellants argue Sheriff Anthony — as a high public official protected by immunity — cannot possibly be held liable under Section 6111(i) as a "person" either, because the General Assembly would not use the term "person" to implicitly waive otherwise applicable immunity for a sheriff. Appellants argue the term "person" is meant instead to reach private individuals, "such as employees and agents of 'licensed dealer[s]'," who do not qualify as high public officials. Appellants' Reply Brief at 7.

Finally, appellants question the Commonwealth Court's reliance on *Gardner*, which predated by nearly a decade the enactment of Section 6111(i), and challenge the court's reliance on *Hidden Creek*, noting that case did not address the UFA, but rather considered whether the Tort Claims Act bars statutory actions under the Municipality Authorities Act; the *Hidden Creek* court did not decide whether any statutory cause of action abrogates absolute immunity otherwise provided to high public officials. Appellants' Brief at 24.

The Pennsylvania Sheriffs' Association (the Association) also filed an *amicus* brief in support of appellants. The Association echoes appellants' argument our courts have long recognized and upheld the absolute nature of high public official immunity. Association's Amicus Brief at 5-7. The Association observes that when the General Assembly intends to waive immunity, such waiver must be specifically authorized by statute. *See id.* at 8, *citing Yakowicz v. McDermott*, 548 A.2d 1330, 1333 (Pa. Cmwlth

1988), *citing* 42 Pa.C.S. §8522 ("In codifying sovereign immunity, the General Assembly has provided that Commonwealth parties are immune to the imposition of liability for actions taken within the scope of their duties *except* as the General Assembly shall waive that immunity."). The Association asserts the Commonwealth Court's analysis of Section 6111(i) was flawed and does not support a finding that the General Assembly intended to abrogate the doctrine of immunity. The Association asserts the confusing and lengthy analysis of the Commonwealth Court — which involved a multi-step process spanning several versions and other irrelevant sections of the UFA — actually supports a finding there is no clear specific intent by the General Assembly to abrogate high public official immunity for sheriffs. The Association notes the UFA specifically defines "sheriff" at Section 6102 and had the General Assembly intended to hold sheriffs liable under Section 6111(i), it could have used the UFA's defined term in the list of individuals to be held liable. Association's Amicus Brief at 10.

Appellees respond first by insisting that high public official immunity was completely abolished in the 1970s. Appellees' Brief at 2-4, *citing Ayala; Mayle*. Appellees then claim the Commonwealth Court correctly held high public official immunity is inapplicable to actions brought under Section 6111(i) because: (1) the immunity only applies to cases involving defamation, and should not be extended to the tort created by the statute; and (2) Section 6111(i) provides a right to sue a sheriff as a "person" or "local government agency" who discloses confidential LTCF information. Appellees note, in the event high public official immunity applies to matters beyond defamation, the immunity is limited to situations where the official is "acting in furtherance of some interest of social importance." *id.* at 6-7, *quoting Montgomery v.*

*City of Philadelphia*, 140 A.2d 100, 102 (Pa. 1958) (emphasis omitted). Appellees argue the alleged violations of Section 6111(i) involved here did not take place in furtherance of any important social purpose, and instead were actually injurious to the public, as demonstrated by the civil and criminal liability set forth in the statute for breaches of confidentiality.

Appellees also claim that even if Sheriff Anthony was acting in furtherance of some matter of social import, high public official immunity was specifically abrogated by the General Assembly when it included the words "any person" and "local governmental agency" as entities that could be held liable for violations of Section 6111(i). *Id.* at 8-9. Appellees echo the reasoning of the Commonwealth Court and argue the Sheriff should be considered a "local governmental agency" as defined in 2 Pa.C.S. §101, which includes "any **officer** or agency of any such political subdivision or local authority," together with Article IX, Section 4 of the Pennsylvania Constitution, which provides that a sheriff is a county officer. *Id.* at 11 & n.13 (emphasis in original). Appellees support this analysis by insisting local sheriffs must be subject to Section 6111(i) liability because, under Section 6109 of the UFA, sheriffs are the issuing authority for the LTCF applications, and as such the confidential information protected by Section 6111(i) is within their possession and control. *Id.* at 11. Thus, appellees conclude, if sheriffs are immune from suit as high public officials, the purpose of providing a cause of action for violations of Section 6111(i) would be eviscerated. *Id.*

Finally, appellees argue 1 Pa.C.S. §2310 is inapplicable to support appellants' position the General Assembly did not specifically waive immunity by enacting Section 6111(i). Appellees claim the argument was not raised below and in any event the reach

of Section 2310 is limited to the **Commonwealth's** officials and employees and thus does not apply to local governmental employees, such as Sheriff Anthony. Appellees' Sur-reply Brief at 3, *citing Juniata Foods, Inc. v. Mifflin Cty. Dev. Auth.*, 486 A.2d 1035, 1037 (Pa. Cmwlth. 1985) (holding "a local authority, does not fit within [the] category" of entities described in 1 Pa.C.S. §2310).[9]

We consider the parties' arguments in light of our scope and standard of review in this appeal from the Commonwealth Court's decision reversing the trial court's order sustaining preliminary objections in the nature of a demurrer. The issue presents pure questions of law over which our standard of review is *de novo* and our scope of review is plenary. *In re Vencil*, 152 A.3d 235, 241 (Pa. 2017); *Dorsey* 96 A.3d at 337. A court may sustain preliminary objections only when it is clear and free from doubt the plaintiff will be unable to establish a right to relief, even when the court accepts as true all well-pleaded, material, and relevant facts alleged in the complaint and every inference that is fairly deducible from those facts. *Mazur v. Trinity Area School Dist.*, 961 A.2d 96, 101 (Pa. 2008).

---

[9] Appellees make an additional argument that high public official immunity is completely unconstitutional under Article I, Sections 11 and 20 of the Pennsylvania Constitution which provide, respectively, that suits may be brought against the Commonwealth and citizens have a right for redress of grievances. Appellees' Brief at 4, 14, *citing* PA. CONST., art. I, §§11, 20. This constitutional challenge seeking complete abolition of high public official immunity is outside the limited scope of this appeal. As stated, we focus only on whether the General Assembly abrogated high public official immunity with respect to liability pursuant to Section 6111(i). For the same reason, we do not reach appellees' claim that even if sheriffs are immune from liability under Section 6111(i), they are nonetheless subject to actions for declaratory and injunctive relief. Appellees' Brief at 13.

The trial court ruled as a matter of law that appellees could not establish a claim for liability under Section 6111(i) against Sheriff Anthony — even if the allegations that he improperly sent confidential information through the mail on postcards are true — because he is entitled to immunity as a high public official.  Trial Ct. Op. at 6-8.  As stated, there is no dispute that, as county sheriff, Sheriff Anthony is a high public official.[10]  In Pennsylvania, high public official immunity is a long-standing category of common law immunity that acts as an absolute bar to protect high public officials from lawsuits arising out of actions taken in the course of their official duties and within the scope of their authority.  *Durham*, 772 A.2d at 69; *Lindner,* 677 A.2d at 1195; *Matson*, 88 A.2d at 895.  The purpose is to protect the high public official from liability, not for his or her own personal benefit, but for the benefit of the **public** he or she serves.  *Lindner*, at 1195-96, *quoting Montgomery,* 140 A.2d at 103 (noting "deeper purpose" of high public official immunity is "protection of society's interest in the unfettered discussion of public business and in full public knowledge of the facts and conduct of such business.").

---

[10] We nevertheless note that, in determining whether an individual qualifies as a high public official, we consider "the nature of [an official's] duties, the importance of [the] office and particularly whether or not [the official] has policy-making functions." *Montgomery v. City of Philadelphia*, 140 A.2d 100, 105 (Pa. 1958) (in Philadelphia, Deputy Commissioner of Public Property and City Architect are high public officials); *see also Durham*, 772 A.2d at 69 (question of who qualifies as high public official focuses on importance of official's office, and whether official has policy-making functions).  Further, "absent statutory classification, the parameters establishing 'high public official' status would be delineated by the judiciary on a case-by-case basis, rather than establishing a bright-line rule." *Lindner*, 677 A.2d at 1198, *quoting Montgomery* 140 A.2d at 105.  It is clear the county sheriff — as a constitutionally created office — qualifies as a high public official.  PA. CONST. art. IX, §4 ("County officers shall consist of  . . . sheriffs . . .").

Specifically, "absolute immunity from civil liability for high public officials is the only legitimate 'means of removing any inhibition which might deprive the public of the best service of its officers and agencies.'" *Id.* at 1196, *quoting Montgomery,* 140 A.2d at 103. Thus, the principle of high public official immunity, while serving a unique role in protecting public officials while acting in their official capacity on behalf of the public, is grounded in the same general, overarching principle of immunity for the public good, as derived from the English concept of sovereign immunity. *Cf. Zauflik v. Pennsbury Sch. Dist.,* 104 A.3d 1096, 1110 (Pa. 2014). The scope of common law immunity, including high public official immunity, is very broad:

> **Absolute privilege**, as its name implies, is unlimited and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, **provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, within his jurisdiction** *. . .*

*Durham*, 772 A.2d at 69, *quoting Matson,* 88 A.2d at 895 (emphasis in original). "This Court has never called into question, much less overruled, the common law doctrine of absolute privilege for high public officials." *Lindner*, 677 A.2d at 1196. In fact, the privilege of immunity has consistently been upheld and was specifically found not to have been abrogated by the legislature. *Durham*, 772 A.2d at 69, *citing Lindner*, 677 A.2d at 1196 (noting doctrine of tort immunity existed prior to the enactment of the Tort Claims Act, which did not abrogate the immunity).

Appellees nevertheless claim Sheriff Anthony is not immune from liability under Section 6111(i) because: (1) the doctrine of immunity generally has been abolished; and (2) the doctrine of high public official immunity, specifically, does not apply because it is

limited to matters of defamation, which is not involved in this matter. Both of these arguments fail. First, appellees' argument that the doctrine of immunity generally has been completely abolished was clearly and unquestionably rejected by this Court and the General Assembly. To the extent appellees argue this Court abolished governmental immunity generally (and, by extension, high public official immunity) in *Ayala* in 1973, as well as the doctrine of sovereign immunity in *Mayle* in 1978, the General Assembly responded by expressly reaffirming governmental immunity in the Tort Claims Act, with only specifically defined exceptions. *Cf. Zauflik*, 104 A.3d at 1113-14 (citing cases and providing historical discussion of doctrine of immunity). Further, when the constitutionality of the Tort Claims Act was challenged in *Carroll v. County of York*, 437 A.2d 394 (Pa. 1981), this Court held the doctrine of immunity not only remained constitutionally sound, but also the purported abolishment of immunity in *Ayala* was overruled. *Cf. Zauflik,* 104 A.3d at 1115, *quoting Carroll*, 437 A.2d at 397 ("It is not our function to displace a rationally based legislative judgment . . . . Manifestly, it is within the province of the Legislature to determine that certain bars to suit are, in its judgment, needed for the operation of local government.").

Further, with respect to high public official immunity specifically, in *Lindner, supra,* this Court unequivocally dismissed a similar argument that the absolute privilege of high public official immunity was abrogated by the terms and definitions in the Tort Claims Act, noting such interpretation would result in an "irrational disparity . . . in the immunities for Commonwealth and local agency employees." *Lindner*, 677 A.2d at 1196. In fact, "[t]his Court has never called into question, much less overruled, the common law doctrine of absolute privilege for high public officials." *Id.* In addition, the

General Assembly expressed its intent to preserve official immunity for local agency employees when it enacted 42 Pa.C.S. § 8546 in 1980.[11] *See, Dorsey*, 96 A.3d at 343 (noting Section 8546 "is the legislative embodiment of official immunity"). Thus, appellees' assertion that high public official immunity was abolished is wholly without merit.

With respect to appellee's second challenge to the application of high public official immunity, the immunity is an absolute privilege broadly applied to actions as well as speech "exempt[ing] a high public official from all civil suits for damages arising out of . . . actions . . . provided the . . . actions are taken in the course of the official's duties or powers and within the scope of his authority. . . ." *Montgomery,* 140 A.2d at 103,

---

[11] Section 8546 provides as follows:

> In any action brought against an employee of a local agency for damages on account of an injury to a person or property based upon claims arising from, or reasonably related to, the office or the performance of the duties of the employee, the employee may assert on his own behalf, or the local agency may assert on his behalf:
>
> (1) Defenses which are available at common law to the employee.
>
> (2) The defense that the conduct of the employee which gave rise to the claim was authorized or required by law, or that he in good faith reasonably believed the conduct was authorized or required by law.
>
> (3) The defense that the act of the employee which gave rise to the claim was within the policymaking discretion granted to the employee by law. For purposes of this subsection, all acts of members of the governing body of a local agency or of the chief executive officer thereof are deemed to be within the policymaking discretion granted to such person by law.

*quoting Matson*, 88 A.2d at 895; *see also*, *Durham*, 772 A.2d at 69 (immunity afforded to high public officials extends to both actions taken as well as statements made by the official during the course of their duties) (emphasis omitted).

Further, we have also consistently held that where the General Assembly intends to provide exceptions to immunity, such exceptions must be specifically and explicitly expressed. *Cf. Zauflik,* 104 A.3d at 1127, *citing* 1 Pa.C.S. §2310 ("pursuant to [Article I,] Section 11 [of the Pennsylvania Constitution], it is General Assembly's intent that Commonwealth, its officials and employees shall remain immune to suit except where immunity is specifically waived."). Moreover, "[b]ecause of the clear intent to insulate government from exposure to tort liability, the exceptions to immunity are to be strictly construed." *Cf. Dean v. Com., Dept. of Transp.*, 751 A.2d 1130, 1132 (Pa. 2000), *citing Kiley v. City of Philadelphia*, 645 A.2d 184, 185-86 (Pa. 1994); *Stackhouse v. Com., Pennsylvania State Police*, 892 A.2d 54, 59 (Pa. Cmwlth. 2006) ("exceptions to sovereign immunity are strictly construed '[b]ecause of the clear intent to insulate [the] government from exposure to tort liability.'"). These well-established principles requiring that exceptions to immunity be specifically provided and strictly construed are equally applicable here, where the precise question before us is whether the General Assembly intentionally acted to abrogate the doctrine of high public official immunity when it enacted Section 6111(i).[12]

---

[12] Although the various privileges discussed in our precedent have distinct origins, one common thread of purpose among them, *i.e.*, protection of the public interest, suggests application of the same strict analysis applicable in cases involving other types of immunity is appropriate in determining whether the privilege of high public official immunity has been abrogated by statute. We therefore consider all of these principles (continued…)

Questions pertaining to statutory waivers of common law immunity are "legislative in nature," and as we consider the ramifications of Section 6111(i), we note "the objective of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." *Dorsey*, 96 A.3d at 340, *citing* 1 Pa.C.S. §§1501-1504, 1921(a) (Statutory Construction Act). It is axiomatic that the best indication of legislative intent is the plain language of the statute. *Commonwealth v. Shiffler*, 879 A.2d 185, 189 (Pa. 2005). We therefore consider the plain language of the statute and determine whether the General Assembly specifically intended to abrogate the immunity that ordinarily applies to high public officials. *See* 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.").

Section 6111(i) of the UFA creates civil liability for breaches of confidentiality by "any person, licensed dealer, State or local governmental agency or department." However, Section 6111(i) does not specifically include in this list of potential defendants the term "sheriff." Notably, the UFA does not define the terms "person" or "State or local government agency," but the UFA does define "sheriff." 18 Pa.C.S. §6102 (sheriff means "the sheriff of the county" or "[i]n a city of the first class, the chief or head of the police department"). Although Section 6111(i) does not include the term, other parts of the UFA specifically refer to "sheriffs." *See, e.g.*, 18 Pa.C.S. §§6105 (describing sheriff's duties regarding safekeeping, instructions and return of firearms and ammunition from persons not to possess firearms); 6106(b)(1) (exempting sheriffs from

_____

(…continued)
in determining whether the General Assembly intended to abrogate the doctrine of high public official immunity through Section 6111(i).

consequences of carrying concealed firearm or firearm in vehicle); 6108 (referencing Section 6106(b) to exempt sheriffs from licensing requirements to carry firearms on public streets and public property in Philadelphia); 6109 (applications for LTCF submitted to sheriff); 6113 (stating sheriff provides licenses to dealers of firearms); 6114 (regarding judicial review of actions taken by sheriff and other officers under UFA).

Appellees assert Sheriff Anthony's immunity from liability under Section 6111(i) was abrogated by the General Assembly because he qualifies either as a "person" or a "local governmental agency." In addition, the Commonwealth Court concluded Sheriff Anthony could be held liable under the statute as a "local government agency." However, our careful review of Section 6111(i) along with the UFA's definitions and UFA as a whole does not support a finding that the General Assembly specifically intended to abrogate the high public official immunity of sheriffs when it stated that "persons" and "local governmental agencies" generally may be held liable for violations of Section 6111(i).

As stated, although the UFA does not define "person," the term "person" is used throughout Section 6111, and when viewed in that context, the term refers to, *inter alia,* individuals who are not licensed dealers, manufacturers or importers engaging in the sale or transfer of firearms. *See, e.g.,* 18 Pa.C.S. §§6111(b) ("No licensed importer, licensed manufacturer or licensed dealer shall sell or deliver any firearm to another person, other than a licensed importer, licensed manufacturer, licensed dealer or licensed collector…"); 6111(c) ("Any person who is not a licensed importer, manufacturer or dealer and who desires to sell or transfer a firearm to another unlicensed person shall do so only upon the place of business of a licensed importer,

manufacturer, dealer or county sheriff's office…"); 6111(g)(1) ("Any person, licensed dealer, licensed manufacturer or licensed importer who knowingly or intentionally sells, delivers or transfers a firearm in violation of this section commits a misdemeanor of the second degree.")  None of the references made to "persons" in other subsections of Section 6111 suggests sheriffs, as defined in the UFA, are explicitly included in the term.  For example, Section 6111(c) provides a "person" who is not a licensed importer, manufacturer or dealer, desiring to sell a firearm to another unlicensed "person" can do so only at the business office of a licensed importer, manufacturer or dealer, or at the office of the **sheriff**.  18 Pa.C.S. §6111(c).  Subsection (c) thus identifies "sheriff" as distinct from a "person," and it is clear the general term "person" does not include the defined term "sheriff."

Moreover, even the Commonwealth Court correctly acknowledged that Section 6111(i) does not explicitly include the term "sheriff" in the list of potential defendants, before ultimately concluding sheriffs are implicitly encompassed in the term "local government agencies."  *Doe*, 139 A.3d at 314.  The court noted sheriffs are county officers as provided in Article IX, Section 4 of the Pennsylvania Constitution, but then stated it had determined in *Gardner* the term "government agency" includes sheriffs. *Id.,* at 314-15, *citing Gardner*, 541 A.2d at 408.

A careful reading of *Gardner* — which involved an earlier version of the UFA that predated Section 6111(i) — reveals the court interpreted "government agency" as defined in Title 2, which regulates Administrative Law.  However, *Gardner* was a mandamus action where an LTCF applicant sought to compel a sheriff to provide a license.  *Gardner*, 541 A.2d at 407-08.  The court considered whether the applicant had

a right to appeal the sheriff's denial under Section 752 of the Local Agency Law which provides "[a]ny person aggrieved by an adjudication of a **local agency** . . . shall have the right to appeal . . ." *Id.* at 408, *citing* 2 Pa.C.S. §752 (emphasis added). Accordingly, the court's reliance on the definition of "government agency" in Title 2 to determine if the sheriff's decision was subject to appeal was reasonable in the particular circumstances of that case. It is clear, however, that the *Gardner* court did not analyze any section of the UFA, and its fact-specific analysis is inapposite here.

We reject the Commonwealth Court's expansion of its reasoning in *Gardner* to determine the General Assembly **implicitly** abrogated Sheriff Anthony's immunity as a high public official by including "local government agencies" as potential defendants in civil suits arising out of violations of Section 6111(i). First, as stated, the definition of "government agency" relied on by the Commonwealth Court is found in Title 2, and such definitions are expressly limited to application within Title 2. 2 Pa.C.S. §101 ("the following words and phrases **when used in this title** shall have . . . the meanings given to them in this section.") (emphasis added). Section 6111(i) is found in Title 18. The Commonwealth Court's error in applying Title 2's definitions to the UFA is compounded by the fact the General Assembly specifically defined the term "sheriff" in the UFA. 18 Pa.C.S. §6102 ("sheriff" means "sheriff of the county" or "chief or head of the police department" in city of the first class). As the General Assembly defined "sheriff" in the UFA, there is no basis for importing Title 2's definition of "government

agency" to the UFA to determine whether the General Assembly intended to include sheriffs as potential defendants under Section 6111(i).[13]

Furthermore, in interpreting section 6111(i), we are mindful that we may find immunity waived only where waiver is expressly stated, and we must construe exceptions to immunity strictly. *Cf. Zauflik*, 72 A.3d at 797 (noting "governmental immunity is an absolute defense" not subject to any exception "beyond th[os]e exceptions granted by the legislature"); *Dean,* 751 A.2d at 1132 (exceptions to immunity are strictly construed). For example, in *Hidden Creek*, the defendant municipal authority sought immunity under the Tort Claims Act from a complaint asserting excessive sewer tapping fees. 129 A.3d at 610. The Commonwealth Court correctly determined the General Assembly expressly waived immunity for lawsuits arising out of improper tapping fees by providing the following language in the Municipal Authorities Act: "[a]ny person questioning the reasonableness or uniformity of a rate fixed by an authority . . . may bring suit **against the authority** in the court of common pleas of the county where the project is located." *Id.* at 611-12, *quoting* 53 Pa.C.S. §5607(d)(9) (emphasis added).

---

[13] Further support for our rejection of the Commonwealth Court's reasoning is found in Chapter 85 of Title 42, which provides definitions related to official immunity at Sections 8545-50. Specifically, Section 8501 defines "Local agency" as follows:

> A government unit other than the Commonwealth government. The term includes, but is not limited to, an intermediate unit; municipalities cooperating in the exercise or performance of governmental functions, powers or responsibilities under 53 Pa.C.S. Ch. 23 Subch. A (relating to intergovernmental cooperation); and councils of government and other entities created by two or more municipalities under 53 Pa.C.S. Ch. 23 Subch. A.

42 Pa.C.S. §8501. Clearly, this definition does not expressly include an "officer" or "official" of an agency, such as Sheriff Anthony.

The statute included clear and unequivocal language waiving governmental immunity and providing an explicit statutory basis for suit specifically against the authority.

The General Assembly did not provide such a clear and unequivocal basis for suit specifically against the sheriff when it enacted Section 6111(i) of the UFA. As the General Assembly defined "sheriff" in the UFA, it could have used that specific term in the statute to target sheriffs for liability if the intention was to abrogate their otherwise applicable immunity. This is particularly so where the UFA specifies that the sheriff is the official in charge of processing LTCF applications. 18 Pa.C.S. §6109. "[W]here the legislature includes specific language in one section of the statute and excludes it from another, the language should not be implied where excluded." *Fonner v. Shandon, Inc.*, 724 A.2d 903, 907 (Pa. 1999), *citing Cali v. City of Philadelphia*, 177 A.2d 824, 832 (Pa. 1962); *see also, Fletcher v. Pennsylvania Property & Cas. Ins. Guar. Ass'n*, 985 A.2d 678, 684 (Pa. 2009) (same). Appellees would have us infer the General Assembly implicitly meant to hold a sheriff liable as a "person" or "local government agency" when it could simply have included "sheriff" in the list of those liable for damages. We decline to hold the General Assembly implicitly abrogated immunity for the sheriff through the use of general, undefined terms. We recognize permitting such implicit abrogation of high public official immunity would undermine the purpose and goal of the doctrine, the value of which has been consistently upheld and recognized by this Court. *See, e.g., Dorsey*, 96 A.3d at 343 ("Official immunity . . . was adopted in the United States to preserve the integrity of public official decision making. The underlying purpose is to allow those in governmental policy making positions to have the ability to act without the fear of litigation and unlimited damages."); *Lindner*, 677 A.2d at 1196, *quoting*

*Montgomery*, 140 A.2d at 183 ("absolute immunity for high public officials from civil liability is the only legitimate 'means of removing any inhibition which might deprive the public of the best service of its officers and agencies.'").

We therefore hold the General Assembly did not specifically and intentionally abrogate high public official immunity such that Sheriff Anthony may be held liable pursuant to Section 6111(i). We further hold the Commonwealth Court erred in its decision to the contrary, which necessarily involved a finding of implicit abrogation that is not supported in the law. Accordingly, we reverse the decision of the Commonwealth Court and remand for reinstatement of the trial court's order sustaining the preliminary objection dismissing Count III of the Complaint against Sheriff Anthony.

Jurisdiction relinquished.

Chief Justice Saylor and Justices Baer, Todd, Donohue, Wecht and Mundy join the opinion.